2007 UT 7

**STATE of Utah, Plaintiff and Petitioner,**

v.

**Richard Jeremy MATTINSON, Defendant and Respondent.**

No. 20050415.

Supreme Court of Utah.

Jan. 19, 2007.

---

**2.** 2004 UT 12, ¶ 14, 84 P.3d 1201.

**3.** 2000 UT 40, ¶ 16, 999 P.2d 17.

Mark L. Shurtleff, Att'y Gen., Matthew Bates, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Jennifer K. Gowans, Provo, for defendant.

WILKINS, Associate Chief Justice:

¶ 1 Richard Jeremy Mattinson was convicted of second degree felony communications fraud. Mattinson properly appealed his conviction to the Utah Court of Appeals, arguing that the Communication Fraud statute, Utah Code section 76–10–1801, is unconstitutionally overbroad and vague. The court of appeals affirmed his conviction, relying on its previous ruling in *State v. Norris*.[1]

1. 2004 UT App 267, 97 P.3d 732.

¶ 2 Mattinson then petitioned for a writ of certiorari, which we granted. In our original order, we requested that the parties address only whether section 76–10–1801, the Communications Fraud statute, is unconstitutionally overbroad on its face. After the original briefings had been filed and after oral arguments, we requested supplemental briefing on the issue of vagueness.

## BACKGROUND

¶ 3 Mattinson was charged with one count of communications fraud or, in the alternative, one count of identity theft. These charges stem from his participation in an alleged scheme to defraud Utah Valley Regional Medical Center ("UVRMC") out of payment for medical services. Mattinson had taken his friend, Stevoni Wells, to the emergency room of UVRMC for treatment. Ms. Wells was worried about being admitted to the hospital in her own name for fear she would be arrested on outstanding warrants against her. In order to avoid arrest, Ms. Wells gave the hospital a false name, address, phone number, and social security number. Mattinson, in order to remain with Ms. Wells, told the hospital falsely that he was her husband. He also gave a false name for himself. Further, when asked what his "wife's" maiden name was, Mattinson gave a false name.

¶ 4 At the time, Ms. Wells was in and out of consciousness. As a result, Mattinson was asked to sign a consent form for Ms. Wells to receive treatment. Mattinson did so but claims he was never told that, in addition to granting consent for necessary medical procedures, he was also assuming personal responsibility for the payment of the medical bills. Additionally, Mattinson says he did not read the back of the consent form where the assumption of responsibility for payment was described.

¶ 5 The State charged the defendant with one count of communications fraud or, in the alternative, one count of identity theft. Mattinson moved to dismiss the communications fraud charge, arguing that the statute was unconstitutionally overbroad and vague. The

district court denied Mattinson's motion, and a jury later convicted him of the second degree felony communications fraud. Mattinson appealed. The court of appeals affirmed the conviction. We granted certiorari.

## STANDARD OF REVIEW

■■■ ¶ 6 "On certiorari, we review the decision of the court of appeals, not the trial court. Whether a statute is unconstitutionally overbroad or vague is a question of law reviewed for correctness. A statute is presumed constitutional, and we resolve any reasonable doubts in favor of constitutionality." [2]

## ANALYSIS

■■■ ¶ 7 The first step when reviewing a constitutional challenge to a statute on overbreadth and vagueness grounds is to determine if the conduct that the statute seeks to criminalize is protected under the First Amendment.[3] As we indicated in *State v. Norris* (*"Norris II"*),[4] the statute at issue seeks to criminalize only false or fraudulent communications made intentionally, knowingly, or with reckless disregard *and* "for the purpose of executing or concealing" a scheme or artifice to defraud another. Such communications receive no protection under the First Amendment.[5] Therefore, we adopt and apply the overbreadth analysis of *Norris II* in which we concluded that the Communications Fraud statute is not constitutionally overbroad.[6] Mattinson, like the defendant in *Norris II*, made knowingly false or fraudulent statements. He made those statements intentionally, and he made them "for the purpose of executing or concealing" a scheme

or artifice to defraud another. Mattinson's speech does not enjoy any constitutional protection under the First Amendment.[7] Therefore, we reaffirm our holding in *Norris II* that the Communications Fraud statute is not unconstitutionally overbroad. Having made this determination, we now move on to the vagueness challenge.

¶ 8 The United States Supreme Court has stated that once a court has made the necessary determination regarding overbreadth "[t]he court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications." [8]

¶ 9 Additionally,

A statute is void for vagueness when its prohibition is so vague as to leave an individual without knowledge of the nature of the activity that is prohibited. To pass constitutional muster, statutes challenged as vague must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and provide explicit standards for those who apply it to avoid arbitrary and discriminatory enforcement.[9]

■■■ ¶ 10 Using these analytic tools, we find that subsection (1)(e) of the statute is "impermissibly vague in all of its applications" so "as to leave an individual without knowledge of the nature of the activity that is prohibited" and is therefore constitutionally deficient.

2. *State v. Norris*, 2007 UT 6, ¶ 10, 152 P.3d 293 (*"Norris II"*) (internal quotation marks and citations omitted).

3. See *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *I.M.L. v. State*, 2002 UT 110, ¶ 15, 61 P.3d 1038.

4. *State v. Norris*, 2007 UT 6, ¶¶ 17, 18, 152 P.3d 293.

5. As we said in *Norris II*, 2007 UT 6, ¶ 19, 152 P.3d 293 without being both false *and* fraudulent, defamatory, or otherwise harmful to the interests

of society, it is unlikely statutory criminalization of such speech would pass constitutional muster.

6. *Norris II*, 2007 UT 6, ¶ 24, 152 P.3d 293.

7. See *Garrison v. Louisiana*, 379 U.S. 64, 75, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) (stating that knowingly false statements and false statements made with reckless disregard of the truth do not enjoy constitutional protection).

8. *Vill. of Hoffman Estates*, 455 U.S. at 494–95, 102 S.Ct. 1186.

9. 16B Am.Jur.2d *Constitutional Law* § 920.

¶ 11 Subsection (1)(e) sets the level of the offense as "a second degree felony when the object of the scheme or artifice to defraud is other than the obtaining of something of monetary value." [10] We find problematic the language "other than the obtaining of something of monetary value." We are unable to determine what activities or conduct this language is intended to encompass. Presumably, it addresses "obtaining . . . something of [no] monetary value." Neither the parties nor we were able to apply any meaningful, logical definition to the phrase. At its extreme, it implies that anything that is totally worthless is of greater criminal import than mere money. Without more, the language of (1)(e) gives no notice whatever of what "something," when "obtained," results in a felony.

¶ 12 This case offers an example of the problems caused by the vagueness of this subsection. The prosecutor, during his closing argument, discussed the necessary elements the State must prove in order to prevail, including what "value" meant. On one hand, he said that the jury could find that the dollar amount of the unpaid hospital bill was sufficient to satisfy this element and be considered "value." However, the prosecutor indicated that "the object of the scheme or artifice to defraud [could also be] something other than obtaining something of monetary value." And that the "biggest thing they were trying to obtain here that wasn't of monetary value . . . was [avoiding execution of] the warrants." Not surprisingly, the jury expressed confusion on whether the treatment received by Ms. Wells qualified as "anything of value" or as "something other than monetary value."

¶ 13 Moreover, we are unable to discern from the record the basis on which the jury convicted Mattinson. The jury could have found Mattinson guilty believing he defrauded the hospital of services that exceeded $5,000 in monetary value. It is also possible that the jury could have concluded that the desire to avoid detection of Ms. Wells' true identity, given the outstanding warrants, was the "value" that Mattinson sought to obtain.[11] Finally, it is also possible that the guilty verdict was based on the treatment that Ms. Wells received and the jury believed that, as to Mattinson, this was "other than for monetary value." We cannot know on what basis the jury convicted Mattinson.

¶ 14 Mattinson also argues that the "any thing of value" language found elsewhere in subsection (1) is likewise vague. We do not agree. We interpret "value" in subsection (1) to mean monetary value, given the specific legislative effort to distinguish something not of monetary value in (1)(e) from the rest of subsection (1). Interpreted in this way, the language is not unconstitutionally vague.

¶ 15 Given the difficulty in determining what "other than the obtaining of something of monetary value" is, and to whom it must have value (the seeker or the victim or both), a person of normal intelligence familiar with the language of subsection (e) of this statute would be left to wonder what behavior is being criminalized. This is the very essence of vagueness that offends the Due Process Clause of the Constitution.[12] Absent subsection (e), the statute is adequately clear to pass constitutional muster. We therefore strike subsection (e) as unconstitutional, preserving the bulk of the statute and the overall intent of the legislature in criminalizing deceptive and fraudulent communications used to victimize others.[13]

---

10. Utah Code Ann. § 76–10–1801(1)(e)(2003).

11. There is some question as to the liability of Mattinson for the hospital bills. Certainly, had he not fraudulently indicated that he was Ms. Wells' husband, he would not have been permitted to sign the consent form, which also made him liable for the payment of the hospital bill. It is difficult to understand why he would engage in a scheme or artifice to defraud the hospital of payment for services he would not have been liable for *absent* the scheme.

12. *State v. Green*, 2004 UT 76, ¶ 43, 99 P.3d 820.

13. Modifications to the statute enacted in the 2006 session added a new subsection (f) that clarifies what may have been meant by something of non-monetary value. The new language specifically incorporates into the criminalized behavior any attempt to take the identity of another. This new language is not before us, and we express no opinion as to its constitutional soundness.

## CONCLUSION

¶ 16 We apply our analysis to the overbreadth challenge to Utah Code section 76–10–1801 the same as in *Norris II*. The statute does not criminalize conduct protected under the First Amendment and therefore is not unconstitutionally overbroad. Conversely, we strike as void for vagueness subsection (1)(e) but leave intact the remainder of the statute. Reversed and remanded for a new trial.

¶ 17 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.