*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 66**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

THE STATE OF UTAH,
*Respondent,*

*v.*

RAYMOND JESUS MARQUINA,
*Petitioner.*

No. 20180994
Heard February 12, 2020
Filed October 15, 2020

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Katie Bernards-Goodman
No. 141914264

Attorneys:

Sarah J. Carlquist, Salt Lake City, for petitioner

Sean D. Reyes, Att'y Gen., Jeffrey S. Gray, Asst. Solic. Gen.,
Salt Lake City, for respondent

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1 Raymond Jesus Marquina was convicted of aggravated robbery after he shot a man five times during an attempted robbery. Marquina appealed his conviction, arguing that he was

denied his right to a jury trial because at least one juror reportedly slept during the proceedings.[1] Because he had not raised this concern in the trial court, the court of appeals analyzed it under the doctrines of plain error and ineffective assistance of counsel. It concluded that the trial court did not plainly err when it did not identify which jurors may have nodded off, question them to ensure they were still qualified to deliberate, and replace them if necessary. *State v. Marquina*, 2018 UT App 219, ¶ 50, 437 P.3d 628. And it held that defense counsel was not ineffective for not asking the trial court to take these steps. *Id.*

¶2    Marquina petitioned for certiorari, which we granted. We affirm.

## BACKGROUND[2]

¶3    A man named Michael Flores received notice that he was going to be evicted from his Magna apartment, so he decided to rob the victim in this case because he had heard that "[he] carried a lot of loose cash." Flores enlisted the help of Leann Velazquez, Ricardo Smith, and Marquina.[3] The group left Magna in the late

---

[1] Marquina also argued on appeal that there was insufficient evidence to support his conviction. *State v. Marquina*, 2018 UT App 219, ¶ 18, 437 P.3d 628. As Marquina failed to object to the sufficiency of the evidence at trial, the court of appeals reviewed the claim for plain error. *Id.* ¶¶ 42–43. The court of appeals determined, "the evidence here is 'not so lacking and insubstantial that a reasonable person could not have determined' that Marquina committed the crime." *Id.* ¶ 48 (citation omitted). As Marquina did not petition for certiorari on this issue, we do not address it.

[2] On appeal, we view "the facts in the record in the light most favorable to the verdict." *State v. Layman*, 1999 UT 79, ¶ 3, 985 P.2d 911.

[3] Part of Marquina's strategy at trial was to highlight the inconsistencies between the testimonies of Flores, Velazquez, and Smith. Although we do not describe the discrepancies in depth, we note there were differences between the participants' descriptions of the events on the night of the shooting. But, as we mentioned, we view the facts in the light most favorable to the verdict. *See supra* n.2.

afternoon or early evening and drove to West Valley.[4] After a series of internet searches the group was able to locate the victim's house.

¶4     Once there, Flores and Marquina got out "to run down to [the] house and rob [the victim]." But as the duo neared the home, Flores "got nervous" and Marquina approached the home alone.

¶5     The victim and his wife had been at the symphony that night, returning home around 10:30 p.m. Shortly after entering the house, they heard a knock at the door, a ring of the doorbell, and more knocking. The victim went to the front door and opened it, finding a person wearing a blue and white streaked bandana[5] and a hat covering his head so that only his eyeballs were visible. The person said something that the victim did not understand and immediately began firing a pistol. In all, Marquina shot the victim five times in the face and neck.

¶6     Hearing the shots, the victim's wife ran to the top of the stairs, which looked down on the front door. From her vantage point she saw an arm with "a dark-colored covering" on it, holding a pistol in a gloved hand. She witnessed "three of the shots go off."

¶7     Marquina and Flores then ran to the circulating vehicle and jumped in the backseat. The group headed back to Magna.

¶8     A neighbor heard the shots and looked out of his window. He "saw two [people] run away." He described both runners as wearing black hoodies.

¶9     Another neighbor ran after the shooter. But she found "nobody in sight." She walked back to the victim's house and happened to kick a black ski mask in the driveway. Law enforcement collected the ski mask and sent it to the crime lab for DNA testing. DNA found on the ski mask was a match for Flores.

¶10 About a month after the incident, two law enforcement officers questioned Flores and Velazquez at the Adult Probation

---

[4] Trial testimony was inconsistent as to whether Marquina drove his own vehicle or rode with the rest of the group from Magna to West Valley.

[5] While the victim described the bandana as being blue and white, he acknowledged being red-green color vision deficient.

and Parole office. Initially, Flores and Velazquez were reluctant to provide information. But they eventually implicated Smith and Marquina, who were arrested the next day.

¶11 Marquina was charged with aggravated robbery with a group enhancement. He pleaded not guilty and a three-day jury trial was set.

¶12 On the second day of trial, during defense counsel's cross-examination of one of the law enforcement officers, defense counsel paused his questioning to ask the court for a sidebar. The State then informed the court, "I'm sorry to interrupt it, but one of the jurors is nodding off. I was thinking maybe we could either stretch or recess or something?" Defense counsel and the court both concurred and a recess was taken.

¶13 The State raised the issue of a drowsy juror again on the third and final day of trial. The court had finished reading the jury instructions and recessed the trial for lunch. Upon returning from the lunch break, the court said to counsel, "talking about the alternate [juror], which is generally according to the rule the last person, unless both of you want to agree to somebody else."

¶14 The State responded,

> I think it's a bit of a problem, your Honor, that we do have someone who has been sleeping through part or—not all but part of the testimony, especially considering that we are now going to have probably rather lengthy closing arguments . . . so I think it is probably safer to use the alternate as an actual . . . juror and use [the sleepy juror] as an alternate. I think, from what I have noticed, from what the State has noticed, he has been dozing off here now, but there have been moments when he has been seemingly out.

¶15 The court responded, "[n]o. 6, the first lady that I have noticed."[6]

¶16 Defense counsel then stated, "I actually have not noticed any of the jurors sleeping. I haven't really been focusing on them." Perhaps suggesting that the juror could have been listening despite shuttered eyes, defense counsel described a federal judge

---

[6] A portion of the court's statement was inaudible.

who is often mistaken for being asleep but rather is "just resting his eyes" and "not only has he been listening but he has been processing everything in a very high way." Counsel finished, "I didn't notice anybody in particular sleeping, but I have to say that I wasn't focused on each and all of the jurors during the testimony. I was often looking at witnesses or evidence."

¶17 The court declined to substitute the alternate juror for the sleepy juror, stating, "[w]ell, then, we will leave it as the final person."

¶18 Attempting again to address the issue, the State offered,

Okay. And . . . if you need to, your Honor, if you feel it is appropriate, I guess you can ask them afterwards, did everybody feel like they have listened to everything and heard everything and [are] capable of judging it, and . . . if anybody says, no, I was asleep for three hours, then we can address it.

¶19 The court seemed to dismiss the suggestion, stating, "I think everyone tried to stay awake." But the court added, "[y]ou may change your mind after closing. If you do, let me know. We will be looking at them this time."[7]

¶20 Neither party mentioned juror inattentiveness after closing arguments. The jury convicted Marquina of aggravated robbery with a group enhancement. He appealed.

¶21 In the court of appeals, Marquina argued that his Sixth Amendment right to trial by an impartial jury was violated based on the State's report that a juror slept during his trial. *State v. Marquina*, 2018 UT App 219, ¶ 17, 437 P.3d 628. Since this issue was not preserved, the court of appeals reviewed it under the plain error and ineffective assistance of counsel doctrines. *Id.* It rejected the claim and affirmed Marquina's conviction. *Id.* ¶ 50.

¶22 We granted certiorari on the following questions: (1) "Whether the Court of Appeals erred in concluding

_____

[7] The record is unclear as to the identity and number of alleged sleepy jurors. The State seemed to refer to one juror who is male ("he has been dozing off"). But the court referenced a seemingly different juror who is female ("[n]o. 6, the first lady that I have noticed."). *See supra* ¶¶ 12–13.

[Marquina] had failed to demonstrate that the [trial] court plainly erred in declining to inquire into the attentiveness of a juror"; and (2) "Whether the Court of Appeals erred in concluding [Marquina] had failed to demonstrate his trial counsel provided ineffective assistance in responding to observations that a juror may have been sleeping."

¶23 We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(a).

## STANDARD OF REVIEW

¶24 "On certiorari, this court reviews the decision of the court of appeals for correctness, giving no deference to its conclusions of law." *State v. Baker*, 2010 UT 18, ¶ 7, 229 P.3d 650.

## ANALYSIS

¶25 Marquina argues that the court of appeals erred in affirming his conviction. He asserts that he was denied his Sixth Amendment right to a jury trial because at least one juror may have slept during his trial. He asks that we reverse the court of appeals' decision to the contrary and remand for a new trial.

¶26 Because Marquina did not raise this issue at trial, the court of appeals analyzed whether (1) the trial court plainly erred in its handling of the State's reports of a sleeping juror, and (2) defense counsel was ineffective for not requesting that the sleeping juror be identified, questioned, and replaced. *State v. Marquina*, 2018 UT App 219, ¶¶ 26–39, 437 P.3d 628. We first review the court of appeals' determination that Marquina did not establish plain error. Then we turn to the court of appeals' determination that Marquina's counsel was not ineffective.

## I. PLAIN ERROR

¶27 Marquina contends that the trial court plainly erred when, after receiving two reliable reports of at least one sleeping juror, it did not identify and *voir dire*[8] the juror to determine if the

---

[8] *Voir dire* is the process by which a judge may examine a juror "to decide whether the prospect is qualified and suitable to serve on a jury." *Voir Dire*, BLACK'S LAW DICTIONARY (11th ed. 2019). Although this usually occurs during the jury selection process, it may also describe examinations of jurors after the jury has been impaneled. *State v. Marquina*, 2018 UT App 219, ¶ 19 n.7, 437 P.3d 628.

juror had missed portions of the trial. He asserts that the court of appeals erred in concluding otherwise.

¶28 We must first address the State's argument that we should not review this claim for plain error, because any error was invited by Marquina. "[A]n error is invited when counsel encourages the trial court to make an erroneous ruling." *State v. McNeil*, 2016 UT 3, ¶ 17, 365 P.3d 699. This typically occurs when "the context reveals that counsel independently made a clear affirmative representation of the erroneous principle." *Id.* ¶ 18. Affirmative acquiescence is insufficient to invite the error. *Id.* ¶ 21.

¶29 We agree with the court of appeals that defense counsel's responses to the State's reports of a sleeping juror do not rise to the level of invited error. *State v. Marquina*, 2018 UT App 219, ¶ 25, 437 P.3d 628. Defense counsel did not affirmatively argue that the court should not identify and *voir dire* the sleeping juror. Nor did he disagree with the State's suggestion that the alternate replace the sleeping juror. Rather, he stated that he had not seen any jurors sleeping, and he posited that a person with closed eyes could still be paying attention. He qualified his answer by acknowledging that he had not been watching the jurors closely. While counsel did not actively support the State's proposal to seat the alternate or join in the State's concern that a juror may have been sleeping, counsel did not disagree with the State or affirmatively argue that the sleepy juror should not be replaced. Accordingly, we conclude that while Marquina's argument is unpreserved, he did not invite the error that he now alleges.

¶30 We now address plain error. To establish plain error, Marquina must show that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error [was] harmful." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993) *abrogated on other grounds by State v. Silva*, 2019 UT 36, ¶ 20, 456 P.3d 718. An error is obvious if "from a review of the record, the appellate court is led to the conclusion that given the circumstances, the trial court should have been aware that an error was being committed at the time." *State v. Verde*, 770 P.2d 116, 122 n.11 (Utah 1989). The prejudice analysis is the same for claims of plain error and ineffective assistance of counsel. *McNeil*, 2016 UT 3, ¶ 29. An error is prejudicial or harmful if the defendant shows "there is a reasonable probability that, but for [the] error[], the result of the proceeding would have been different." *Id.* ¶ 27 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "If any one of

these requirements is not met, plain error is not established." *Dunn*, 850 P.2d at 1209.

¶31 Marquina argues that because the trial court received reliable reports of a sleeping juror, it was required to (1) identify the sleeping juror and (2) *voir dire* the juror to discover what portions of the trial the juror may have missed. He asserts that this requirement is obvious under Utah law. To show prejudice, he compiles the trial evidence that the juror might have missed—based on the timing of the State's reports that a juror was sleeping—to argue that there was a reasonable likelihood of a different verdict had the trial court replaced the juror with the alternate who had presumably heard the evidence.

¶32 We have misgivings about the trial court's handling of the State's concerns here. The State twice made reliable reports that a juror was sleeping. On the second day of trial, the State apprised the court that it had seen a juror "nodding off." The court did not inquire further into what the State had observed, although it agreed to the State's request to take a break. On the third day, the State informed the court that the juror was again "dozing off," and sometimes "seemingly out." The State raised the issue at a time when the court had the ability to resolve it by substituting the presumptive alternate juror for the drowsy juror. Before declining to do this, the trial court did not gather additional information about what the prosecutor had seen or question the juror to determine if the juror had actually been asleep and had missed portions of the trial. While we maintain that the trial court is in the best position "to gauge the degree, if any, of the juror's incapacity to serve in the trial," *State v. Lesley*, 672 P.2d 79, 82 (Utah 1983), here the trial court seemed dismissive of the State's concerns and did not make any further inquiries into what the State had observed.

¶33 Even so, we agree with the court of appeals that Marquina has not shown plain error because the error was not obvious. *Marquina*, 2018 UT App 219, ¶ 34. In Utah, there is no "settled appellate law," *id.* ¶ 28 (citation omitted), establishing a mandatory protocol when a trial court receives a report of a sleeping juror. Rather, we have observed that deciding how to respond to a sleeping juror is "so peculiarly within the observation, province, and discretion of the trial court that we should not interfere with the ruling, except upon a clear abuse of discretion." *State v. Mellor*, 272 P. 635, 639 (Utah 1928) (finding no abuse of discretion where the trial court did not grant a new trial

after a juror "had several times dozed off at short or brief intervals" but affirmed that he was "not unconscious" and "heard and understood all that transpired in the courtroom during the trial" (internal quotation marks omitted)). While established precedent may not be required for a party to invoke plain error, absence of such precedent is material to the question of whether the error would be obvious to the trial court. *See State v. Ross*, 2007 UT 89, ¶ 41, 174 P.3d 628, *abrogated on other grounds by State v. Hummel*, 2017 UT 19, ¶ 111, 393 P.3d 314.

¶34  In *State v. Anderson*, 251 P. 362 (Utah 1926), we deferred to the trial court's factual findings in affirming the court's denial of a motion for new trial. *Id.* at 364. In that case, the defendant claimed that one juror had slept at various times throughout the proceedings. *Id.* The trial court considered supporting affidavits from people who were present during the trial, which were filed with the motion. *Id.* It also received an affidavit from the juror in question. *Id.* The trial court found "that the juror had not slept during the taking of testimony." *Id.* And we refused to "disturb that finding." *Id.*

¶35  While the court in *Anderson* reviewed affidavits in order to determine whether a juror had been sleeping, we have also upheld trial court decisions based on the court's own observations. For example, in *State v. Pace*, 527 P.2d 658 (Utah 1974), the trial court denied a motion for mistrial based on the reports of "two onlookers" that "two of the jurors consciously went to sleep." *Id.* at 659. The court stated that it "had observed the whole jury; that one had not gone to sleep, and the other did 'doze for a second, twice' but had aroused before [the court] 'had a chance to call it to [the juror's], attention.'" *Id.* We affirmed, deferring to the "sound discretion of the trial judge." *Id.*; *See also State v. Granados*, 2019 UT App 158, ¶ 40, 451 P.3d 289 (affirming the trial court's *sua sponte* dismissal of a juror without first questioning the juror, based on the court's own observation of the juror repeatedly sleeping).[9]

---

[9]  After oral argument in this case, Marquina submitted the court of appeals' *State v. Granados* opinion as supplemental authority under rule 24(j) of the Utah Rules of Appellate Procedure. 2019 UT App 158, 451 P.3d 289. Marquina argues that *Granados* shows that "an error related to a sleeping juror is obvious." We first note that the *Granados* opinion was published

(Continued . . .)

¶36 In *State v. Lesley*, the defendant moved for a mistrial because of a drowsy juror after the trial had ended, although he had not brought the issue to the court's attention during the proceedings. 672 P.2d at 82. The only relevant record evidence was that the trial court had "expressed concern to a juror who had been up during the night before the trial about his ability to stay awake." *Id.* We noted there was nothing in the record to infer that the juror had actually slept. *Id.* And we concluded that the trial court had not abused its discretion, noting, "[t]he trial judge was in a position to gauge the degree, if any, of the juror's incapacity to serve in the trial." *Id.*

¶37 The court of appeals accurately observed that deference to the trial court's exercise of discretion is a thread running through our case law in this area. *Marquina*, 2018 UT App 219, ¶ 29. As discussed, we have affirmed a range of trial court responses to observations of drowsy jurors. In light of this, we cannot say that it should have been obvious to the trial court that a particular course of action was mandatory. Accordingly, because any error in the court's response here was not obvious, we affirm the court of appeals' determination that Marquina has not shown that the trial court plainly erred.

¶38 However, while we conclude that the trial court did not plainly err, this does not mean we find its response to be satisfactory. When a trial court receives a reliable report of a sleeping or otherwise inattentive juror, the court should proceed in a manner that is proportional to the report. The court has flexibility, of course, in determining what response would be proportional under the circumstances. But at a minimum, it is important for the court to glean any facts relevant to determining whether a juror has missed a portion of the trial, and to make an informed decision about whether the juror remains qualified to decide the case.

---

after the trial in this matter, so the trial court would not have had the benefit of the opinion during Marquina's trial. But even if it had, *Granados* would not change our plain error analysis. There is no question that a trial court can and should address an instance of a sleeping juror. But as the court of appeals recognized in *Granados*, "There is no hard-and-fast rule governing how a district court must deal with sleeping jurors." *Id.* ¶ 39.

¶39 We also highlight that an instance of a sleeping or inattentive juror inherently evades documentation in the record. While the record reflects what was spoken at trial, it does not reflect what participants saw at trial unless they describe it on the record. When a trial court encounters an issue related to an inattentive juror, appellate courts can defer to the trial court's chosen course of action only to the extent that there is a clear record of what occurred and the court states its reasoning on the record. *See Northgate Vill. Dev. LC v. City of Orem*, 2019 UT 59, ¶ 35, 450 P.3d 1117 ("We give deference to [trial] courts on evidentiary rulings, but we can only defer to what is provided.").

¶40 We have now clarified that when a trial court receives a reliable report of a sleeping or inattentive juror, the court should respond in proportion to the report. Here, the trial court did not investigate and was dismissive of the State's reports. Going forward, a response that is not commensurate with the seriousness of the information before the court would constitute plain error.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

¶41 Marquina next argues that defense counsel's response to the State's reports of a sleeping juror fell below an objective standard of reasonableness. Marquina asserts that his counsel performed deficiently when he did not argue that the trial court should (1) identify the sleepy juror, (2) *voir dire* the juror to ascertain what portions, if any, of the trial the juror missed, and (3) replace the juror with the alternate.

¶42 In order to establish ineffective assistance, Marquina must show that (i) counsel's performance was deficient and (ii) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688.

¶43 In order to establish deficient performance, Marquina must rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. This presumption is especially apt in the jury selection context. As the court of appeals correctly noted in its analysis of Marquina's claim,

> There are a multitude of inherently subjective factors typically constituting the sum and substance of an attorney's judgments about . . . jurors. A . . . juror's

demeanor, interaction with others in the courtroom, and personality in general may all play an important role in providing clues as to that juror's likely predilections toward the case at hand.

*State v. Marquina*, 2018 UT App 219, ¶ 37, 437 P.3d 628 (alterations in original) (quoting *State v. Litherland*, 2000 UT 76, ¶ 21, 12 P.3d 92).

¶44 In the context of jury selection, "counsel's lack of objection to, or failure to remove, a particular juror is presumed to be the product of a conscious choice or preference." *Litherland*, 2000 UT 76, ¶ 20. Further, "because the process of jury selection is a highly subjective, judgmental, and intuitive process, trial counsel's presumably conscious and strategic choice to refrain from removing a particular juror is further presumed to constitute effective representation." *Id.* We agree with the court of appeals that these presumptions apply equally in the juror retention context.

¶45 We conclude that Marquina has not rebutted the presumption of effective representation. He argues that his counsel could not have been acting reasonably because he did not know who the sleeping juror was or how much of the trial the juror might have missed. As an initial observation, we are not certain the record supports this conclusion. Marquina presumes there was no communication between the State and defense counsel about the sleeping juror. But we note that it was defense counsel who paused his cross-examination to request the sidebar during which the State first raised the issue. We can only speculate as to how counsel knew the State wanted a sidebar and how much of an explanation the State had given him. And the "defendant bears the burden of assuring the record is adequate." *Id.* ¶ 16.

¶46 But even assuming defense counsel did not know the identity of the sleepy juror, we agree with the court of appeals that counsel may have simply disfavored the alternate juror. *See Marquina*, 2018 UT App 219, ¶ 39 ("[D]efense counsel may have preferred *any* of the actual jurors over the alternate juror."). As the court of appeals observed, "Marquina's counsel was able to observe the jurors, including the alternate, over the course of three days. Everything from the jurors' demeanors to their reactions to testimony may have played a role in counsel's decision not to insist on replacing the sleepy juror." *Id.*

¶47 Ultimately, we agree with the court of appeals that Marquina has not shown his counsel's actions were deficient. And therefore, his claim for ineffective assistance of counsel fails.

## CONCLUSION

¶48 We conclude that the trial court did not plainly err in its handling of the State's reports of a sleeping juror. However, we clarify that in such circumstances, a trial court should respond to a report of an inattentive or drowsy juror in a manner that is proportional to the report before it. We also conclude that defense counsel did not provide ineffective assistance. We affirm.

———————