**2021 UT App 62**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
GABRIEL RODOLFO BRAN,
Appellant.

Opinion
No. 20200318-CA
Filed June 10, 2021

Third District Court, Salt Lake Department
The Honorable Amber M. Mettler
No. 181902692

Hakeem Ishola and Carlos Navarro, Attorneys
for Appellant

Sean D. Reyes and Jonathan S. Bauer, Attorneys
for Appellee

SENIOR JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES JILL M. POHLMAN and RYAN M. HARRIS concurred.[1]

APPLEBY, Senior Judge:

¶1    Gabriel Rodolfo Bran appeals his conviction of object
rape, in connection with the inappropriate touching of one of his
massage therapy patients (Patient). Bran argues that the district
court committed plain error in several instances and that his trial
counsel (Counsel) provided constitutionally ineffective
assistance. We affirm.

---

1. Senior Judge Kate Appleby sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

BACKGROUND[2]

¶2    Patient was experiencing sciatic nerve pain and sought treatment at the chiropractic clinic where Bran worked. Her first massage therapy session with Bran lasted thirty minutes and ended without incident. But during a second session, while Bran was massaging Patient's inner thigh, he slid his hand beneath her underwear and his fingers between her labia. Patient grabbed Bran's arm, each of them briefly froze, and Bran withdrew his hand, apologized, and left the room. Patient dressed and tried to collect herself, then reported the incident to the office manager and the owner of the clinic. She exited the clinic through the back door, her face red from crying. After calling her husband and sister to tell them what had happened, she called the police. At the responding officers' suggestion, Patient went to an emergency room for a sexual assault forensic exam. On the basis of Patient's allegations, Bran was charged with one count of object rape.

¶3    Patient testified at trial about the inappropriate touching. She stated, "And then just before I knew it, his hand just slid right under my underwear and then it—it slid right under my underwear and then curved under and went—his fingers went right between my labia." Patient clarified she was not informed that this kind of touching would be part of the massage, nor did she consent to Bran touching her this way. Patient also testified about Bran's reaction after she stopped him: "He stood on the side of the bed for a second. He said, 'Oh, shit.' Walked to the foot of the bed, grabbed my feet and said, 'I'm sorry. I apologize.'"

---

2. "We recite the facts in a light most favorable to the jury verdict. We present conflicting evidence only when necessary to understand issues raised on appeal." *State v. Vallejo*, 2019 UT 38, ¶ 2 n.1, 449 P.3d 39 (quotation simplified).

¶4     The State also presented testimony from two clinic employees who saw or talked to Patient after the massage. The clinic's office manager reported that Patient was "almost shaking" and "was crying" when reporting the incident. A different massage therapist testified he saw Patient exit through the back door "crying" and "hysteric." The nurse who conducted the sexual assault forensic exam similarly testified that Patient was "quite tearful."

¶5     As part of the State's case, a forensic DNA analyst also testified and discussed the results from Patient's sexual assault forensic exam. The analyst testified that the DNA test used was sufficiently sensitive to detect touch DNA, which she described as "the transfer of DNA just by physical touch," where DNA is "left behind after coming in contact with an object." She explained that the test performed revealed a DNA profile with three male contributors—one major contributor and two minor contributors. She also explained that the DNA testing excluded Bran as the major contributor but the testing was inconclusive regarding the minor contributors as a result of their low DNA levels in the samples.

¶6     The defense presented its case on the second day of trial. It called a separate DNA expert, who agreed with the State's expert that Bran was excluded as the major contributor but further asserted that Bran could also be excluded as either of the two minor contributors.

¶7     Later that day, the defense called its final witness—a certified massage therapy instructor, who testified about appropriate massage procedures and sheet-draping techniques, as well as possible referred sensations that could occur during a massage.[3] During Counsel's direct examination of this witness,

---

3. A referred sensation is one "that is localized (i.e., experienced) at a point different from the area stimulated. For example, when

(continued…)

the prosecutor notified the court that a juror was falling asleep and suggested it might be a good time for a short break. Counsel agreed, and the court announced a five-minute recess for jurors to stretch, use the restroom, or get a "caffeinated drink." After the break, the witness examination continued, and there were no further issues with sleepy jurors.

¶8 The jury ultimately found Bran guilty of the charged offense. Bran now appeals.

ISSUES AND STANDARDS OF REVIEW

¶9 Bran raises only one issue that he asserts was preserved by an objection at trial: that the district court erroneously allowed testimony regarding Patient's crying. "We review the legal determinations leading to an admissibility ruling for correctness. We review the factual findings for clear error. And we review the admissibility ruling itself for abuse of discretion." *State v. McCullar*, 2014 UT App 215, ¶ 21, 335 P.3d 900 (quotation simplified).

¶10 Bran recognizes that the remainder of his arguments were not preserved for appeal, but he invites us to consider each of them under two exceptions to the preservation rule: plain error and ineffective assistance of counsel. *See generally State v. Johnson*, 2017 UT 76, ¶ 18, 416 P.3d 443 ("A failure to preserve an issue in the trial court generally precludes a party from arguing that issue in an appellate court, absent a valid exception."). "To demonstrate plain error, a defendant must establish that (i) an

---

(…continued)

the elbow is struck, the mechanical stimulation of the nerve may cause tingling of the fingers." American Psychological Ass'n, *Referred Sensation*, APA Dictionary of Psychology, https://dictionary.apa.org/referred-sensation [https://perma.cc/Z3KQ-ZDPG].

error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful . . . ." *State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (quotation simplified). "Plain error is a question of law reviewed for correctness." *State v. Smit*, 2004 UT App 222, ¶ 7, 95 P.3d 1203. Similarly, "[w]here, as here, a claim of ineffective assistance of counsel is raised for the first time on appeal without a prior evidentiary hearing, it presents a question of law." *State v. Bryant*, 965 P.2d 539, 542 (Utah Ct. App. 1998). "In order to bring a successful ineffective assistance of counsel claim, appellant must show that his trial counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and that the deficient performance prejudiced the outcome of the trial." *Id.* (quotation simplified).[4]

ANALYSIS

I. Patient's Crying

¶11 The clinic office manager, the other massage therapist, and the nurse each testified that Patient was crying, and Bran maintains this evidence constituted inadmissible hearsay. Bran asserts this issue was preserved; the State argues it was not and we therefore should not consider it. Because this claim can be resolved on its merits in the State's favor, we choose to address the alleged error without analyzing whether the issue was preserved. *See State v. Kitches*, 2021 UT App 24, ¶ 28, 484 P.3d 415 ("If the merits of a claim can easily be resolved in favor of the party asserting that the claim was not preserved, we readily may

---

4. Bran additionally makes a cumulative error argument, but because he ultimately does not show any individual errors here, the cumulative error doctrine does not apply. *See State v. Galindo*, 2019 UT App 171, ¶ 17 n.4, 452 P.3d 519 ("There are no errors to accumulate here, rendering the cumulative error doctrine inapplicable in this case.").

opt to do so without addressing preservation. This approach accords with the purpose of our preservation rules, as it prioritizes judicial economy without altering the incentive to object at trial." (quotation simplified)), *petition for cert. filed*, May 11, 2021 (No. 20210320).

¶12 The rule against hearsay applies to certain out-of-court statements. *See* Utah R. Evid. 801(c), 802. In this context, the term "statement" is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." *Id.* R. 801(a). Thus, although the definition of a statement is sufficiently broad to include nonverbal conduct, for that conduct to be subject to the rule against hearsay, the person engaged in it must have "intended it as an assertion." *Id.*; *see also* R. Collin Mangrum & Dee Benson, *Mangrum and Benson on Utah Evidence* 849 (2020–2021 ed.) ("If the conduct is not expressly assertive, but instead only impliedly reflects the belief of the actor regarding some fact in question, then the evidence would not fall within the hearsay rule. In such cases, the evidence would be admissible as circumstantial evidence of the fact in question."). Bran has not argued in the district court or on appeal that by crying, Patient was making an assertion; thus, it was not error for the district court to refuse to exclude the testimony as hearsay. *See State v. Hall*, 946 P.2d 712, 716 (Utah Ct. App. 1997) ("In this case, defendant makes no attempt to show that [the victim] intended her behavior to be an assertion. We therefore decline to address defendant's argument regarding [the victim]'s nonverbal conduct."); *see also* Mangrum & Benson, at 849 ("The rule is so worded as to place the burden upon the party claiming that the assertive intention existed; ambiguous and doubtful cases will be resolved against him and in favor of admissibility." (quotation simplified)).

## II. Bran's Apology

¶13 Bran argues Counsel was deficient for not moving to exclude Patient's testimony about his apology to her and that the

district court committed plain error in allowing it. Bran argues that Patient's testimony about his apology does not fit within either the statement-against-interest exception or the residual exception to the rule against hearsay. *See generally* Utah R. Evid. 804(b)(3), 807. But rule 801(d)(2) of the Utah Rules of Evidence excludes from the definition of hearsay any statement made by and offered against an opposing party. *Id.* R. 801(d)(2); *see also State v. Vargas*, 2001 UT 5, ¶ 36, 20 P.3d 271. Therefore, the testimony regarding Bran's apology was not hearsay in the first place[5] and the court did not commit error by failing to exclude it on hearsay grounds. Likewise, Counsel would have had no reason to think that an objection on hearsay grounds would be successful, and thus, the failure to move to exclude the testimony on hearsay grounds did not constitute ineffective assistance of counsel. *See State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel.").

### III. The Sleepy Juror

¶14 Bran argues that the district court should have questioned the sleepy juror to ascertain whether the juror missed "vital testimony" and that Counsel was deficient for not requesting such questioning. In making these arguments, Bran overstates precedent when he asserts that questioning the juror was necessary in his case.

> In the handful of Utah appellate cases discussing a sleeping juror's effect on a trial, one

---

5. Although Bran essentially concedes this point in his brief, he also points out that a statement sometimes may be inadmissible on other grounds even when it is not excluded as hearsay. Nonetheless, Bran does not suggest what other grounds may have supported a successful objection to the apology evidence. Thus, this argument is unavailing.

principle predominates: discretion. Indeed, handling a sleeping juror is so peculiarly within the observation, province, and discretion of the trial court that we should not interfere with the ruling, except upon a clear abuse of discretion.

*State v. Marquina*, 2018 UT App 219, ¶ 29, 437 P.3d 628 (quotation simplified), *aff'd*, 2020 UT 66, 478 P.3d 37.[6]

¶15 Bran characterizes the issue as one in which "a juror indisputably napped." But no evidence in the record demonstrates that the situation was so severe. During Counsel's questioning of the final witness at trial, the prosecutor simply alerted the court that "a juror is falling asleep." This present tense statement suggests that the juror was struggling to stay awake and does not demonstrate that the juror was sleeping at all, let alone for any significant period. The attorneys and the court agreed that a quick break would address the issue. And nothing in the record suggests that the juror struggled to stay awake after the break or that he was sleepy at any other point in the trial. Based on these circumstances, we cannot say that the court abused its discretion through its chosen remedy of a quick recess to afford the jurors a chance to stretch, move around, and get a drink. Because this remedy appears appropriate under the circumstances here, we cannot say that Counsel rendered ineffective assistance in failing to move for a different remedy.[7]

---

6. Although the *Marquina* case cited here has since been affirmed on appeal, the decision by the court of appeals was the law in effect at the time of Bran's trial, and it is therefore the lens through which we evaluate his plain error and ineffective assistance of counsel arguments.

7. We do, however, note the Utah Supreme Court's recent guidance on this issue in *State v. Marquina*, 2020 UT 66, 478 P.3d

(continued…)

## IV. Directed Verdict

¶16    Bran argues the evidence was insufficient to support a conviction for object rape and therefore Counsel provided ineffective assistance in failing to move for a directed verdict and the district court plainly erred when it did not sua sponte dismiss the charge against him. A trial court will dismiss the charges against a defendant "if the State did not establish a prima facie case against the defendant by producing believable

---

(…continued)
37, *aff'g* 2018 UT App 219, 437 P.3d 628. Although the supreme court's opinion in *Marquina* was decided after Bran's trial and would not be applicable to his plain error or ineffective assistance of counsel claims, it will be applicable in future cases that concern the issue of an inattentive juror. In *Marquina*, the supreme court clarified that "when a trial court receives a reliable report of a sleeping or otherwise inattentive juror, the court should proceed in a manner that is proportional to the report" and "the court has flexibility, of course, in determining what response would be proportional under the circumstances." *Id.* ¶ 38 (quotation simplified). The supreme court also stressed that "it is important for the court to glean any facts relevant to determining whether a juror has missed a portion of the trial, and to make an informed decision about whether the juror remains qualified to decide the case." *Id.* The supreme court further cautioned, "When a trial court encounters an issue related to an inattentive juror, appellate courts can defer to the trial court's chosen course of action only to the extent that there is a clear record of what occurred and the court states its reasoning on the record." *Id.* ¶ 39. Thus, in a case like the one before us, the district court should make a detailed record regarding the issue, for example, eliciting information from the person reporting the drowsy juror about the extent of the observed juror inattention and spelling out its reasoning for the chosen course of action in remedying the issue.

evidence of all the elements of the crime charged." *State v. Emmett*, 839 P.2d 781, 784 (Utah 1992) (quotation simplified). For a conviction of object rape, the State was required to prove that Bran,

> without the victim's consent, cause[d] the penetration, however slight, of the genital or anal opening of another person who is 14 years of age or older, by any foreign object, substance, instrument, or device, including a part of the human body other than the mouth or genitals, with intent to cause substantial emotional or bodily pain to the victim or with the intent to arouse or gratify the sexual desire of any person.

Utah Code Ann. § 76-5-402.2 (LexisNexis 2017).

¶17 Patient's testimony regarding the incident provides believable evidence of the consent and penetration elements.[8]

---

8. Bran appears to suggest that Patient's testimony was not believable because the DNA evidence "all but exonerated" him. But this mischaracterizes the evidence. The DNA evidence presented by the State indicated that Bran could be ruled out as the major contributor in the DNA sample but could not be ruled out as one of the two minor contributors because at "those low levels, it can be uncertain as to if everyone is fully represented." The defense's DNA expert came to a different conclusion and asserted that Bran could be eliminated as either of the minor contributors. Thus, the experts did not agree on this issue. Furthermore, the defense's DNA expert testified there was no guarantee that if Bran had touched Patient as alleged, his touch DNA would have been found on the samples tested. Thus, the expert essentially acknowledged that even if Bran could be eliminated as one of the minor contributors, that would not necessarily prove he did not touch Patient as she alleged.

And her testimony of Bran's other actions and reactions could support a jury's finding of the required intent. *See Emmett*, 839 P.2d at 784 ("While evidence of intent is usually not susceptible to direct proof, it can often be inferred from circumstance."); *State v. James*, 819 P.2d 781, 789 (Utah 1991) ("It is well established that intent can be proven by circumstantial evidence."). Thus, Patient's testimony alone would be sufficient evidence to overcome any motion for a directed verdict, had it been made.[9] Where a directed verdict based on insufficient evidence would not have succeeded in this case, it was not error—plain or otherwise—for the district court to fail to dismiss the charges against Bran, nor was it ineffective assistance for Counsel to not seek a directed verdict, *cf. State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel.").

## V. Lesser Included Offense

¶18 Finally, Bran argues that Counsel provided ineffective assistance by failing to request a jury instruction on the lesser included offense of sexual battery and that the district court plainly erred by not providing such an instruction even without the request. First, Bran does not attempt to show there was a basis for a lesser-included-offense instruction on sexual battery; that is, he does not explain how "there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense," *see* Utah Code Ann. § 76-1-402(4) (LexisNexis 2017). Furthermore, "even when there is a basis for a lesser-included-offense instruction, counsel can reasonably decide not to request one." *State v. Hull*, 2017 UT App

---

9. Bran's argument identifies other pieces of evidence that he sees as supportive of his version of events. But "the existence of conflicting evidence alone cannot justify taking the case away from the jury." *State v. Torres*, 2018 UT App 113, ¶ 21, 427 P.3d 550.

233, ¶ 16, 414 P.3d 526. "[C]ounsel could reasonably pursue an 'all or nothing defense' when, in light of the weaknesses in the State's evidence of the case, it would be reasonable for counsel to conclude that submitting a lesser included offense instruction would obviate a defendant's reasonable chances of a full acquittal." *State v. Powell*, 2020 UT App 63, ¶ 43, 463 P.3d 705. Furthermore, "counsel does not perform deficiently by failing to request a lesser included offense instruction that is inconsistent with the defense presented at trial." *Id.*

¶19 Counsel may have concluded the State's case against Bran was weak (indeed, Bran expresses the same viewpoint on appeal) and reasonably elected an all-or-nothing defense. Additionally, a jury instruction on sexual battery would have been inconsistent with Bran's theory of the case below—that he did not touch Patient inappropriately but, instead, she felt referred sensations from appropriate massage procedures. For these reasons, Counsel did not perform deficiently by not requesting an instruction on sexual battery. And where Counsel reasonably did not request such an instruction, the district court did not commit plain error by failing to give a lesser-included-offense instruction on sexual battery that was never requested.

CONCLUSION

¶20 The district court did not err by allowing testimony regarding Patient's crying. Nor has Bran shown that the district court committed plain error or that Counsel rendered ineffective assistance relating to the other issues raised. We therefore affirm.

───────────