**2026 UT App 11**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DEBRA KAY YOUREN,
Appellant.

Opinion
No. 20220571-CA
Filed January 29, 2026

Fourth District Court, Nephi Department
The Honorable Anthony L. Howell
No. 191600058

Ann M. Taliaferro, Attorney for Appellant

Derek E. Brown and William M. Hains,
Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES GREGORY K. ORME and AMY J. OLIVER concurred.

TENNEY, Judge:

¶1 Debra Youren entered into a caretaking agreement with her elderly neighbor (Neighbor) under which Youren agreed to manage Neighbor's ranch and help him with various household and medical needs. To facilitate the arrangement, Neighbor gave Youren access to his bank account. Over the course of several years, Youren used funds from Neighbor's bank account to pay for ranch expenses, but she also used those funds to purchase things for herself and members of her family.

¶2 Youren's activities came to light after Neighbor's death, and Youren was later charged with exploitation of a vulnerable adult, theft, and fraudulent handling of recordable writings. A

jury found Youren guilty of the first two charges but acquitted her on the third.

¶3     Youren now appeals her convictions on several grounds. Among others, Youren argues that the district court erred in denying her requests for a bill of particulars, and she also argues that she received ineffective assistance when her trial counsel (Counsel) did not object to various jury instructions and did not argue that the exploitation statute was unconstitutionally vague. For the reasons set forth below, we conclude that Youren has not shown that there was any reversible error. We therefore affirm her convictions.

BACKGROUND[1]

*Underlying Facts*

¶4     Youren was first introduced to Neighbor in 1995 when she and her family bought a ranch next to his near the Nevada-Utah border. Youren and Neighbor would often do favors for each other, including "everyday stuff" such as "cow work" or cleaning ditches. Before Neighbor's wife died in 2013, Youren would also sometimes drive her to doctor's appointments.

¶5     In January 2015, when Neighbor was 85 years old, Neighbor and Youren drafted a "caretaker agreement." The agreement read, in relevant part, as follows[2]:

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Suhail*, 2023 UT App 15, n.1, 525 P.3d 550 (quotation simplified).

2. In reciting the text of this agreement, we've continued to anonymize Neighbor's name, but we've made no further alteration to spelling or punctuation.

I [Neighbor] agree to trade to Debra Youren 12 heifers and 10 calves a year starting January 2015 for work on my, [Neighbor's] ranch. Debra Youren can run up to 30 cows with [Neighbor]. I [Neighbor] agree to pay all costs associated with ranch and personal costs.

I Debra Youren agree to be the Ranch manager, house keeper, cook, a care taker which includes taking care of his medical needs which includes doctor appointments and travel to and from. [Neighbor] understands that there will be situations when Debra Youren will need to hire day labor to maintain all of the above responsibilities.

. . . .

I Debra Youren understands and will do everything medically possible to see that [Neighbor] stays at his home until he passes away which is his wishes.

In return [Neighbor] agree to sell Debra Youren his ranch for $300,000.00. which includes all cow permits, water rights, 100 head of cows/calfs, machinery, tools and vehicles associated with running [Neighbor's] ranch.

Debra Youren has 1 year after [Neighbor] passes to deposit $300,000.00 into his family trust for the purchase of his ranch.

Any equipment purchased after January 2015 belongs to remaining partner if any partner passes away.

This contract can not be broken without both parties agreeing to any changes. If this contract is voided with mutual agreement Debra Youren will be owed $50,000.00 a year for every year starting January 2015.

¶6    The agreement was notarized and signed by Youren and Neighbor in August 2015, but they began acting on it shortly after it was drafted. In February 2015, Neighbor withdrew $334,556.26 from accounts that were in the name of a family trust that he and his late wife had created, and he then put that money into a new bank account. The next month, Neighbor added Youren as a signatory on the new account.

¶7    Over the course of the next several years, Youren used her personal credit card to pay for ranch expenses and Neighbor's care. Youren would then transfer money from Neighbor's new bank account to her account, and she would use Neighbor's money to pay off her personal card.

¶8    But in addition to using Neighbor's money to pay off ranch-related expenses, Youren used it to pay for her own personal expenses. Between January 2015 and Neighbor's death in July 2017, Youren made around 1,100 charges on her personal card. These included charges for such things as fuel, groceries, entertainment expenses, and motel rooms. These also included 216 purchases from Amazon. Many of the Amazon purchases were delivered directly to Youren, and some of them were delivered directly to her children. These purchases included such things as clothing, movies, cosmetics, children's toys and books, and a laptop and computer accessories. As with the expenses for Neighbor's ranch and medical care, Youren would transfer funds from Neighbor's bank account to her own and then use those funds to pay off her personal card, and she would often do so within just a few days of making charges for personal expenses. Although Youren would typically use the full amount transferred from Neighbor's account to pay off the balance on her personal

card, on some occasions, Youren paid less on her personal card than she had transferred from Neighbor's account. In total, Youren transferred over $100,000 from Neighbor's account to her own, and she used most of the money that she transferred to pay off her personal card.

¶9 Separate from the financial transfers, Youren made other transactions that were later called into question in the criminal prosecution. These primarily had to do with Neighbor's property.

¶10 As discussed, the caretaker agreement had a provision stating that Neighbor would sell the ranch to Youren for $300,000 and that she had one year after his death to put that money into his family trust. In September 2015, Neighbor signed a quitclaim deed that transferred the ranch (including three different parcels totaling 301.60 acres) from his family trust to himself. In July 2016, Neighbor signed a notarized quitclaim deed that granted Youren ownership of the ranch and those same three parcels, together with all water rights and mineral rights. The county assessor's estimate of the total worth of the three parcels was $439,468.

¶11 In late 2016, Neighbor was diagnosed with dementia. Neighbor died on July 6, 2017. Four days after Neighbor's death, Youren recorded the quitclaim deed giving herself ownership over the ranch.[3]

¶12 In the months after Neighbor's death, Youren continued using Neighbor's bank account to pay off her personal card. From

---

3. As discussed below, the charges in this case ultimately focused solely on various bank transfers. For what it's worth, there's no indication in the record that Youren had transferred $300,000 to the family trust at the time she recorded the quitclaim deeds, and at the subsequent trial, one of Neighbor's sons testified that Youren had never paid the money. By contrast, Youren claimed that by the time of trial, she had returned ownership of the ranch to Neighbor's sons.

July through November 2017, Youren transferred a total of $24,000 from Neighbor's bank account to her account, which she then used to pay off her personal card.

*Charges and Trial*

¶13    Youren was later charged with one count of exploitation of a vulnerable adult (we'll use "exploitation" as shorthand when referring to this charge and the underlying statute moving forward), one count of theft, and one count of fraudulent handling of recordable writings.[4] The information read, in relevant part, as follows:

> COUNT 1: EXPLOITATION OF A VULNERABLE ADULT, . . . Debra Kay Youren on or about 2015 through July 2017 did knowingly or intentionally and unjustly or improperly use or manage the resources of a vulnerable adult for the profit or advantage of someone other than the vulnerable adult, and the aggregate value of the resources used or the profit made was or exceeded $5,000.

> COUNT 2: THEFT, . . . Debra Kay Youren on or about July 2017 through September 2017 did obtain or exercise unauthorized control over the property of another person with a purpose to deprive the person thereof, and (i) the value of the property or services was or exceeded $5,000; (ii) the property stolen is a firearm or an operable motor vehicle; or (iii) the property was stolen from the person of another.

---

4. As already indicated, the jury ultimately acquitted Youren on the third count, so we'll focus the procedural history on the relevant events relating to the other two counts.

¶14 Youren filed a motion for a bill of particulars. In this motion, Youren asked the district court to order the State to identify the specific dates, resources, and "manner" that Neighbor's resources were improperly used for purposes of the exploitation charge, and she also asked for the State to identify "the specific properties" that were taken for purposes of the theft charge. The State moved to strike this motion as premature, and the district court agreed and struck it at a hearing.

¶15 Youren later filed a second motion for a bill of particulars, reciting the same requests as she had made in the first motion. In March 2020, the court denied the motion as to the exploitation charge, concluding that Youren had been sufficiently "apprised of all information necessary to prepare her defense" through the information, discovery in the case, and what she had learned in a contemporaneous civil case that had been filed against her by members of Neighbor's family. But the court granted the motion, in part, as it related to the theft charge. The court accordingly ordered the State to

> (1) provide a list of those properties–whether real property, monetary assets, or material assets– implicated in this count; (2) describe the manner in which it alleges [Youren] asserted unauthorized use, control, or ownership over the listed properties; and (3) if the same property identified here is also implicated in Count I, indicate how [Youren's] actions and/or mens rea differs in this Count II, from Count I.

¶16 In accordance with the court's order, the State filed a bill of particulars in April 2020 that outlined the things that the State was contending Youren had unlawfully taken for purposes of the theft charge. Youren did not object to this bill of particulars, nor did she ever argue to the district court that it was inadequate.

¶17    Before trial, Youren submitted a proposed special verdict form that would require the jury to list (1) the specific resources and profits that Youren had exploited for purposes of the exploitation charge, as well as (2) the specific "things or money" that she had "obtained or exercised unauthorized control" over for purposes of the theft charge. During a conference at trial, the court denied Youren's request to give the jury this proposed special verdict form, stating that it "did not see any reason that a special verdict form was required in this criminal case." When the court then asked whether the parties had any questions about the verdict form that it intended to give the jury, Counsel answered, "No, Your Honor."

¶18    The case was tried over the course of eight days in March 2022. During that trial, the State presented evidence showing how Youren had transferred money from Neighbor's bank account to her personal account and how she would then use those funds to pay off her personal expenses. The State provided specific examples of various expenses that Youren paid off using Neighbor's funds that were not related to Neighbor's ranch or his medical care, such as purchases from a women's underwear company, for home decor, and for beauty and skincare products.

¶19    At the end of the State's case, Counsel moved for a directed verdict. Counsel agreed that the State had put on sufficient evidence as it related to Youren's use of "money from the bank accounts," but Counsel was concerned that the State might be intending to also argue that conviction was warranted on either charge based on certain farm equipment or cattle that Youren may have taken for herself. In the course of arguing that motion, the prosecutor reiterated that the exploitation charge was based on conduct from "February [of 2015] to July of 2017," while the theft charge was based on conduct from "July of 2017 to . . . September/October [of 2017]," which the prosecutor referred to as the "after death period." During this same argument, the prosecutor clarified that he "only intend[ed] to argue to the jury that the theft was of the money taken from [Neighbor's] account."

The district court denied the motion for a directed verdict, but in doing so, it "admonish[ed] the State to do what [it had] told" the court it was "going to do" with regard to keeping the theft and exploitation timelines separate.

¶20 The defense's theory at trial was that all of the expenses at issue were authorized by Neighbor. In the defense's opening statement, for example, Counsel asserted that this case is "about what [Neighbor] wanted and planned, what [Youren] wanted and asked for and was given, and what she did and what [Neighbor] did to carry out that plan." Youren testified in her own defense, and during her testimony, she claimed that Neighbor had told her to use her personal card for the ranch, saying, "Just use yours, [Youren], and we'll just pay it off. That's how we'll do it." When she was asked about some of her credit card purchases that the State claimed were improper, Youren attempted to justify them. For example, she claimed that the product she had purchased from the women's underwear company was "a support bra" that was recommended by an organization for women in farming and ranching. And Youren also testified that she had purchased an "organic shampoo body wash" for Neighbor because his skin was "real thin and frail." But Youren did concede that some of the purchases were for her personal use, such as some of the cosmetic and hygiene products.

*Jury Instructions and Conviction*

¶21 At the outset of trial, the court gave preliminary instructions. Several of these instructions expressly informed jurors that the State bore the burden of proving each element of each offense with proof beyond a reasonable doubt. Indeed, in one particular instruction, jurors were told that Youren did "not have to prove anything." Before closing arguments, the court gave jurors the final instructions. Several of these instructions reiterated the State's burden of proof. One instruction informed jurors that the "law presumes" that Youren "is not guilty of the crimes charged" and that this "presumption persists unless the

prosecution's evidence convinces you beyond a reasonable doubt that [Youren] is guilty." Another stated that "the prosecution must prove" both "the specific conduct and mental state" listed in each elements instruction "before [Youren] can be found guilty of the crimes charged."

¶22 The final instructions also contained several instructions that are particularly relevant to issues on appeal, including the following:

- Instruction 20, which informed jurors that "[i]gnorance or mistake of fact which disproves the culpable mental state is a defense to any prosecution for that crime."

- Instruction 21, which stated that "[t]he 'claim of right defense' applie[d]" to the theft charge if Youren "(a) acted under an honest claim of right to the property," "(b) acted in the honest belief that she had the right to obtain or exercise control over the property," or "(c) obtained or exercised control over the property . . . honestly believing that the owner, if present, would have consented."

- Instruction 23, which set out the elements of the exploitation charge. This instruction told jurors that they could not convict Youren of this offense unless, "based on the evidence," they found "beyond a reasonable doubt" each of the listed elements, including that Youren had "intentionally or knowingly" and "unjustly or improperly used or managed the resources of a vulnerable adult" "for the profit or advantage of someone other than the vulnerable adult" in an "aggregate" amount that exceeded $5,000.

- Instruction 25, which set out the elements of theft. This instruction told jurors that they could not convict Youren of this offense unless, "based on the evidence," they found "beyond a reasonable doubt" each of the listed elements,

including that Youren had "intentionally or knowingly" "obtained or exercised unauthorized control over the property of another" "with a purpose to deprive him thereof," and "the value of the property or services" was or exceeded $5,000.

- Instruction 34, which informed jurors that "[b]ecause this is a criminal case, every single juror must agree with the verdict before the defendant can be found 'guilty' or 'not guilty,'" and which further informed them that the verdict must reflect the jurors' "individual . . . judgment as to whether the evidence presented by the prosecutor proved each charge beyond a reasonable doubt."

¶23 In its closing argument, the prosecutor reiterated that the exploitation charge was "for April of 2015 to [Neighbor's] death" and that the theft charge was "for things that occurred after [Neighbor's] death." In its closing argument, Counsel argued that this case is "really about what . . . Youren thought she could do under the circumstances that she was put under." Counsel maintained that Youren believed she was "allowed to pay her expenses" from the joint bank account and that just because Neighbor may not have "agree[d] with" all of her purchases, that "doesn't make [her] a criminal." Counsel further asserted that Youren's actions were "rational under the circumstances."

¶24 At the close of trial, the jury found Youren guilty of exploitation and theft.

ISSUES AND STANDARDS OF REVIEW

¶25 On appeal, Youren first argues that her due process rights were violated because the State did not give her adequate notice of the nature of the charges against her. This court reviews a district court's "decision regarding the constitutional adequacy of

the notice given to a criminal defendant for correctness." *State v. Klenz*, 2018 UT App 201, ¶ 29, 437 P.3d 504.

¶26    Youren next argues that the district court erred in not giving the jury additional instructions on unanimity. As explained below, we agree with the State that this issue is unpreserved. As a result, we accept Youren's request (briefed in the alternative) to review this claim for either plain error or ineffective assistance of counsel. "Claims for plain error and ineffective assistance of counsel present questions of law, which we determine in the first instance as a matter of law." *State v. Thomas*, 2025 UT App 145, ¶ 15, 579 P.3d 416.

¶27    Youren then argues that she received ineffective assistance because Counsel did not object to several alleged errors in the jury instructions and did not file a motion arguing that the exploitation statute is unconstitutionally vague. As noted, ineffective assistance claims that are raised for the first time on appeal present questions of law. *See id.*

ANALYSIS

I. Due Process and Notice

¶28    Youren first argues that the State violated her due process rights by failing to give her adequate notice of the nature of the charges against her. We see no reversible error with respect to either of the charges for which Youren was convicted.

¶29    "The right of an accused to know the nature of the offense with which [the accused] is charged is a fundamental right guaranteed by both our federal and state constitutions." *State v. Seumanu*, 2019 UT App 90, ¶ 28, 443 P.3d 1277 (quotation simplified). Under the Sixth Amendment to the United States Constitution, a defendant in a criminal case "enjoy[s] the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. And under the Utah Constitution, a defendant

has the right "to demand the nature and cause of the accusation" and "to have a copy thereof." Utah Const. art. I, § 12. "The crux of both theories is that a criminal defendant must be sufficiently apprised of the particulars of the charge to be able to adequately prepare [her] defense." *State v. Fulton*, 742 P.2d 1208, 1214 (Utah 1987) (quotation simplified).

¶30 Here, Youren argues that she "managed and engaged in hundreds of transactions and interactions for [Neighbor]" over the relevant period, and against this backdrop, she contends that she wasn't "apprised . . . of the particular acts or specific conduct which made up the elements of each charge she would face at trial." In her view, her due process rights were violated because the State did not provide her with "notice stating when and regarding what resources she allegedly mismanaged" for purposes of the exploitation charge or of the properties that she unlawfully took from Neighbor (or, rather, his estate) for purposes of the theft charge. We address each charge below.

A.      Theft

¶31 For analytical reasons, we'll start with the theft charge. With respect to this charge, we agree with the State that Youren did not preserve her challenge. We therefore decline to address it.

¶32 It is well settled that "an appellant must properly preserve an issue in the district court before it will be reviewed on appeal." *Ahhmigo, LLC v. Synergy Co. of Utah*, 2022 UT 4, ¶ 16, 506 P.3d 536 (quotation simplified). For an issue to be preserved, it must have been "presented to the district court in such a way that the court ha[d] an opportunity to rule on it." *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828 (quotation simplified). This implies, "at a minimum, not just the invocation of a legal principle but also its application to the facts of the case." *Salt Lake City v. Kidd*, 2019 UT 4, ¶ 33, 435 P.3d 248 (quotation simplified). Thus, "the issue must be specifically raised, in a timely manner, and must be supported by evidence and relevant legal authority." *Donjuan v. McDermott*,

2011 UT 72, ¶ 20, 266 P.3d 839. If a party seeks to raise an issue on appeal that it failed to preserve in the district court, "the party must argue an exception to preservation." *Ahhmigo*, 2022 UT 4, ¶ 16 (quotation simplified).

¶33　With respect to notice claims like Youren's, our supreme court has held that

> the notice to which a defendant is constitutionally entitled may come through one or all of three sources: the charging information, a response to a bill of particulars under rule 4(e) of the Utah Rules of Criminal Procedure, or a response, under section 77-14-1 of the Code, to a demand for the place, date, and time of the offense charged.

*State v. Wilcox*, 808 P.2d 1028, 1031 (Utah 1991); *accord State v. Williamson*, 2024 UT App 141, ¶ 45, 558 P.3d 143, *cert. denied*, 568 P.3d 263 (Utah 2025). Working through these potential sources of notice, we first note that, by rule, the charging information must include, among others, identification of the statutory offense at issue, *see* Utah R. Crim. P. 4(b)(2), and, in cases involving a felony or a class A misdemeanor, a "statement of facts sufficient to support probable cause for the charged offense," *id.* R. 4(c)(1). Rule 4 states that if a defendant believes that the information does not set out sufficient facts to inform the defendant "of the nature and cause of the offense charged, so as to enable the defendant to prepare a defense," the defendant may then file a request for a bill of particulars. *Id.* R. 4(e). Alternatively, a defendant may make a demand, pursuant to Utah Code section 77-14-1, for "the place, date and time of the commission of the offense charged." According to our supreme court, however, "if a defendant fails to request a bill of particulars or make demand for the date, place, and time under section 77-14-1 and a response to either of these would have cured the claimed deficiency, then he or she will be deemed to have waived the constitutional right to adequate notice." *Wilcox*, 808 P.2d at 1032.

¶34    As discussed above, Youren filed a motion for a bill of particulars in this case. Although the district court denied the request as to the exploitation charge, it granted it with respect to the theft charge. Pursuant to the court's order, the State then submitted a bill of particulars that set forth its contentions of what was at issue for purposes of that charge. Indeed, Youren tells us in her brief that it was her request for a bill of particulars that preserved her notice claim for both issues.

¶35    But for the purposes of the theft charge, Youren's problem is that, after she received the bill of particulars from the State, she never objected to it or otherwise argued to the district court that it was inadequate and that she still did not have notice of the nature of this charge. In light of this, from the district court's perspective, because Youren had received a bill of particulars from the State and was willing to proceed onward to trial on that basis, Youren's need for additional notice had been satisfied and no further judicial action was required. While Youren now contends otherwise, we agree with the State that Youren simply did not present her claim "to the district court in such a way that the court ha[d] an opportunity to rule on it." *Patterson*, 2011 UT 68, ¶ 12 (quotation simplified).

¶36    We do note that after the State argued in its responsive brief that the notice issue was unpreserved as it relates to the theft charge, Youren argued in her reply brief that it would have been futile for her to have challenged the lack of notice after she received the bill of particulars. In Youren's view, futility thus excuses any lack of preservation with respect to this issue. We disagree with this contention.

¶37    In Utah, futility operates as an "exception to the general requirement of preservation." *State v. Ashcraft*, 2015 UT 5, ¶ 33, 349 P.3d 664; *see also State v. Rothlisberger*, 2004 UT App 226, ¶ 29, 95 P.3d 1193 ("Under our law, parties are not required to make futile objections in order to preserve a future claim."). But a showing of futility typically requires some "indication of the

[district] court's unwillingness to hear any further objection or explanation" on the matter. *Ashcraft*, 2015 UT 5, ¶ 34. In *Ashcraft*, for example, our supreme court concluded that "the timing, tone, context, and content of the district court's response" to a general objection from defense counsel were such that any "further objection" or request for "explanation" would have been "futile," thereby excusing the defendant's failure to preserve a more "specific objection." *Id*. In some circumstances, futility can also turn on the nature of the district court's original ruling. In *Rothlisberger*, for example, we held that when a district court definitively ruled that the testimony in question "was lay witness testimony," that ruling rendered any additional "objection that was predicated on expert-testimony rules futile." 2004 UT App 226, ¶ 29.

¶38    But nothing similar occurred here. Again, the district court had granted Youren's request for a bill of particulars as to the theft charge, so it had shown that it was receptive, not hostile, to her request for additional information about the nature of that charge. From there, Youren points to no place in the record, and we see none ourselves, where the district court expressed its unwillingness to hear an objection about any alleged inadequacy in what the State had provided or any unwillingness to entertain further request for notice. In light of this, we see no basis for concluding that any further objection or request would have been futile. And because Youren did not assert any other exception to the preservation rule as it relates to the theft charge, we decline to consider this challenge further.

B.    Exploitation

¶39    Youren also argues that she did not receive adequate notice regarding the nature of the exploitation charge. As noted, the district court denied Youren's request for a bill of particulars as to this charge, so we agree with Youren that she preserved a notice challenge as to it. But even so, we conclude that Youren is not

entitled to reversal because she has not shown that she was prejudiced by any lack of notice.

¶40    As an initial matter, the parties disagreed in the briefing about the prejudice standard that would apply to such a claim, so we start our analysis there. In *State v. Robbins*, our supreme court held that when a defendant challenges a district court's denial of a request for a bill of particulars, the defendant is only entitled to a reversal if the defendant shows "prejudicial error." 709 P.2d 771, 773 (Utah 1985). The court then held that to do this, the defendant must show "that the denial of his motion for a bill of particulars deprived him of the opportunity to assert a defense he reasonably might have had against the charges." *Id.*

¶41    In *State v. Bell*, the supreme court subsequently clarified the nature of this inquiry. 770 P.2d 100 (Utah 1988). There, after receiving a bill of particulars from the State, the defendant argued that this bill was still "too vague to give him adequate notice of the charge." *Id.* at 102–03. But the State "refused to amend the bill of particulars," and the "court rejected" the defendant's subsequent and "persistent challenges to the adequacy of the notice he had received." *Id.* at 103. On appeal, the defendant again argued that he had not received adequate notice, and the supreme court first ruled that the bill of particulars was indeed too vague to have satisfied the defendant's constitutional rights. *See id.* at 103–05.

¶42    Turning to the question of prejudice, the supreme court held that such claims are ordinarily subject to reversal only when the defendant shows that, "absent the error, there was a reasonable likelihood of a result more favorable" to them. *Id.* at 106. Echoing the standard set forth in *Robbins*, the court then suggested again that the question turns on whether the lack of notice "impeded the accused's ability to prepare for trial and to meet the State's case." *Id.* But the court also recognized that "in some circumstances[,] the nature of the error involved is such that this de facto burden should be shifted and the State required to

persuade us that the error was harmless." *Id*. The court held that if "the accused" makes "a credible argument that the prosecutor's errors impaired the defense," it becomes "appropriate to place the burden on the State to persuade a court that the error did not unfairly prejudice the defense." *Id.* (quotation simplified). The question thus becomes what it would look like for a defendant to show that he or she was prejudiced by a lack of notice—which, by extension, would inform the initial question of how a defendant could make "a credible argument" that the prosecution's errors had prejudiced the defense. *Id.*

¶43     The supreme court's earlier decision in *State v. Burnett*, 712 P.2d 260 (Utah 1985), provides one example of demonstrated prejudice. In that case, the evidence the State presented at trial varied from the nature of the conduct that was implicated in the charging document—namely, the information had accused the defendant of stealing funds from a trust account, but at trial, the State abandoned that theory and instead presented evidence showing that the defendant had stolen from third-party investors. *See id.* at 262. On appeal, the supreme court held this was reversible error because the defendant was "not on notice" that he should prepare to respond to assertions about theft from investors—i.e., the defense that he had prepared was not "structured to meet that charge." *Id.* The court thus concluded that "[b]ecause the variance clearly prejudiced [the defendant] in the preparation and conduct of his defense on the merits, the conviction must be reversed." *Id.*

¶44     Our decision in *State v. Draper-Roberts*, 2016 UT App 151, 378 P.3d 1261, provides another example. There, the State provided notice before trial that it would call certain witnesses, and in the defense's opening statement, defense counsel addressed the potential impact (or lack thereof) of those witnesses' expected testimonies. *See id.* ¶¶ 9, 40. But midway through trial, the State decided not to call one of the witnesses who had previously been disclosed, and the State instead called a different witness who had not been disclosed. *See id.* ¶¶ 9–10.

Moreover, also during the trial, the State decided that it would introduce body cam video that had not previously been disclosed. *See id.* ¶¶ 7, 43. On appeal, we held that the defendant had made a credible showing that these failures to disclose had prejudiced the defense. We held the State's shift in witnesses caused the defense to give an opening statement that was largely ineffective, *see id.* ¶¶ 41–42, and we further held that the "mid-trial disclosure of the body cam video inhibited defense counsel's ability to effectively cross-examine the officer and to move to exclude inadmissible portions of the video," *id.* ¶ 43.

¶45    But we've also recognized that the "burden shifting" contemplated by *Bell* "does not occur automatically" whenever the State does not provide proper notice. *State v. Ahmed*, 2019 UT App 65, ¶ 27, 441 P.3d 777 (quotation simplified). Again, it requires the defendant to first make "a credible argument" that the lack of notice "impaired the defense." *Id.* (quotation simplified). In *State v. Swapp*, for example, we held that although the defendant had argued that the district court improperly denied his request for a bill of particulars, the defendant had "failed to make a credible argument as to how the failure to provide the bill of particulars impaired his defense." 808 P.2d 115, 120 n.7 (Utah Ct. App. 1991). We held that this was so because the defendant had not shown with any specificity "what facts were not disclosed to him," nor had the defendant "articulate[d] a particular legal theory he would have been able to employ had a bill of particulars been provided" or if he had received more notice. *Id.*

¶46    Applying these principles here, we conclude that Youren has not made a credible showing of how the alleged lack of notice impaired her defense. Youren's defense to the exploitation charge was that she was authorized to do everything that she did or at least reasonably believed that she was so authorized (thereby showing that she lacked the necessary mens rea). But in her opening brief on appeal, Youren did not argue that the State relied on any particular transaction at trial that somehow surprised her

or for which she was unprepared to present a defense, nor did she argue with any specificity that she would have advanced a different theory at trial if she had been given more specific notice.

¶47    Instead, Youren's prejudice argument is essentially that because the State gave her only broad descriptions of the alleged misconduct, she prepared to address many transactions that the State did not end up relying on at trial. In a sense, she thus argues that she wasted time and energy preparing too much of a defense. While we don't foreclose the possibility that in some case, a wasted-resources argument such as this one might show prejudice, we still think this would require some credible assertion that the diversion of time or energy somehow impaired the defendant's ability to prepare a defense for the case that was actually presented at trial. And again, Youren has not given us any credible reason to believe that this occurred.

¶48    As a result, we conclude that Youren was required to show that, "absent the error, there was a reasonable likelihood of a result more favorable to" her, meaning that the lack of notice somehow "impeded [her] ability to prepare for trial and to meet the State's case." *Bell*, 770 P.2d at 106. Because she has failed to do so, we reject this claim for lack of prejudice.

## II. Unanimity

¶49    Youren next argues that the charges in this case were "duplicitous." From there, Youren argues that the district court erred by failing to instruct jurors that they were required to be unanimous as to the particular transactions that formed the basis for the two charges. We see no reversible error.

### A.    Preservation

¶50    As an initial matter, we note that the parties dispute whether this issue was preserved. We agree with the State that it wasn't.

¶51   Youren claims that she preserved her unanimity claim by asking the court to give jurors a special verdict form. And in some cases, we might agree that a request for a special verdict form could be enough to preserve a unanimity claim, particularly if that request is tied in some way to an assertion that the jury needed to be unanimous about the acts in question. But the preservation doctrine is context-specific. Again, as noted, it requires a party to present an issue "to the district court in such a way that the court ha[d] an opportunity to rule on it," *Patterson*, 2011 UT 68, ¶ 12 (quotation simplified), which implies, "at a minimum, not just the invocation of a legal principle but also its application to the facts of the case," *Kidd*, 2019 UT 4, ¶ 33 (quotation simplified).

¶52   Here, although it's true that Youren asked the court to give a special verdict form, we're not persuaded that, in the context of this case, her request adequately preserved the issue she seeks to raise on appeal relating to the unanimity requirement. The special verdict form that Youren proposed didn't mention unanimity at all. Thus, on its face, this request would not have alerted the district court that Youren was asking for this special verdict form as a means of protecting her constitutional right to a unanimous verdict. Then, in the ensuing jury instruction conference at trial, Counsel never asked the court to give the special verdict form as a means of protecting Youren's constitutional right to a unanimous verdict. Indeed, in the course of that discussion, Counsel never mentioned the unanimity requirement.

¶53   Moreover, while we acknowledge that in many cases, a party might request a special verdict form precisely for the purpose of ensuring that the jury is unanimous about required elements, the State persuasively points out that there are other reasons for requesting such a form that are separate from concerns about unanimity.

¶54   Our supreme court has explained that

> great care should be taken to submit questions to the
> jury so that they are as clear as possible. When a
> general verdict will best settle the issues, it should
> be used. When specific issues cannot be reached by
> a general verdict, the trial court should take
> advantage of special verdicts or special
> interrogatories.

*Baker v. Cook*, 308 P.2d 264, 267 (Utah 1957). In this sense, special verdict forms can be used to provide answers to questions that may otherwise be unclear on a general verdict form alone.

¶55 Courts have also recognized that such forms can be used as a tool for assisting the jury in its deliberations. In *State v. Parsons*, for example, the supreme court affirmed the use of a special verdict form in a death penalty case that called upon jurors to note which of the aggravating factors they had found existed. 781 P.2d 1275, 1279–80 (Utah 1989). Although the ultimate question before the jury was whether the aggravating factors outweighed the mitigating factors, and, thus, whether the death penalty was warranted, the supreme court held that this special verdict form was appropriate and perhaps even "helpful" to the jury in deciding how to "weigh the aggravating factors against the mitigating factors," and it further held that the form would then be helpful to "an appellate court in determining whether a sentence of death was properly imposed." *Id.* at 1280.

¶56 This comports with how such forms can be used in civil cases. Under rule 49(a) of the Utah Rules of Civil Procedure, a court may submit a special verdict form that asks jurors to decide discrete issues of fact, and this process can be used "in a complicated case" to "relieve" the jury of "attempting to apply the law" to those facts. *Dishinger v. Potter*, 2001 UT App 209, ¶ 17, 47 P.3d 76 (quotation simplified). This process can likewise be used in a criminal case. *See State v. Gray*, 851 P.2d 1217, 1225–26 (Utah Ct. App. 1993). Indeed, we have said that special verdict forms can be used in "highly confusing cases" involving a "confusing"

statutory scheme. *Id.* at 1226; *see also Bell*, 770 P.2d at 109 (noting that a particular statute "lends itself to confusion" and explaining that "[a]ppellate review of such cases would be greatly enhanced" by the use of special verdict forms).

¶57　And there are other potential uses for such forms. Such a form may be useful in a criminal case as a means of aiding a defendant in advancing "a subsequent double jeopardy defense" should he or she ever be subject to prosecution again. *State v. Germonto*, 868 P.2d 50, 58 (Utah 1993) (quotation simplified). And in some civil cases, special verdict forms can be used to ensure that a party does not obtain a double recovery when the jury is presented with alternative theories from the plaintiff. *See Ramon v. Nebo Sch. Dist.*, 2021 UT 30, ¶ 21, 493 P.3d 613.

¶58　We are by no means intending the above discussion to provide a comprehensive list of the potential purposes for special verdict forms, nor do we intend to offer advice on the utility of such forms or the strategic advisability of such requests. But what we do acknowledge here is that there are recognized purposes for such forms that fall outside of concerns about unanimity. Because of this, we don't believe that, standing alone, Youren's request for a special verdict form adequately alerted the district court that she was intending to make a claim about her right to a unanimous verdict, much less a claim about a requirement for unanimity as to any particular point. And since she points to no other place where she raised this unanimity issue, we accordingly treat it as being unpreserved.

B.　Merits

¶59　In anticipation of a possible preservation objection from the State, Youren alternatively argued in her opening brief that, even if we conclude that this issue was unpreserved, she should still be entitled to relief for either plain error or ineffective assistance of counsel.

¶60    To demonstrate plain error, Youren "must establish that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Cooper*, 2011 UT App 234, ¶ 26, 261 P.3d 653 (quotation simplified). "To establish that [an] error should have been obvious to the trial court, [Youren] must show that the law governing the error was clear at the time the alleged error was made. Consequently, an error is not obvious if there is no settled appellate law to guide the trial court." *State v. Brown*, 2025 UT App 31, ¶ 32, 566 P.3d 737 (quotation simplified).

¶61    Alternatively, to show that she received ineffective assistance of counsel, Youren must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). An ineffective assistance claim fails when the proposed motion would have been futile. *See State v. Rivera*, 2022 UT App 44, ¶ 24, 509 P.3d 257. This is so because "it is not unreasonable for counsel to choose not to make a motion that would not have been granted." *State v. Makaya*, 2020 UT App 152, ¶ 9, 476 P.3d 1025.

¶62    For the reasons set forth below, we don't believe that Youren has established either plain error or ineffective assistance with respect to the alleged failure to ensure that the jury reached a unanimous verdict as to the particular transactions at issue in each charge.

1.    Governing law

¶63    We begin by setting forth the law relating to duplicity and unanimity that would have governed such a claim if it had been raised sua sponte by the district court (for purposes of Youren's plain error claim) or instead by Counsel (for purposes of Youren's ineffective assistance claim).

¶64    The Utah Constitution states that in "criminal cases[,] the verdict shall be unanimous." Utah Const. art. I, § 10. This provision requires "unanimity as to a specific crime and as to each element of the crime." *State v. Saunders*, 1999 UT 59, ¶ 60, 992 P.2d 951. Put differently, it "requires unanimity as to each count of *each distinct crime charged* by the prosecution and submitted to the jury for decision," and it also requires unanimity on "each *element* of the crimes in question." *State v. Hummel*, 2017 UT 19, ¶¶ 26, 50, 393 P.3d 314 (first emphasis in original, second emphasis added).

¶65    The problem of duplicity concerns the broad level question of how many "count[s]" have been charged for the "distinct crime" at issue. *Id.* ¶ 26. Charges are duplicitous when the State has joined "two or more distinct and separate offenses in a single count." *Germonto*, 868 P.2d at 58 (quotation simplified). "One vice of duplicity is that a jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of a particular offense." *Id.* (quotation simplified). To avoid this problem, "separate instances of the crime" at issue must be charged as "distinct counts." *Hummel*, 2017 UT 19, ¶ 28. And to determine the contours of the unanimity requirement in such a case, a court must determine the "unit of prosecution," which is "primarily a question of interpreting the text of the statute defining the crime." *State v. Rasabout*, 2013 UT App 71, ¶¶ 16–17, 299 P.3d 625 (quotation simplified), *aff'd*, 2015 UT 72, 356 P.3d 1258. The question in such cases thus turns on "whether a particular course of conduct involves one or more distinct offenses under [a] statute." *Id.* ¶ 17 (quotation simplified).

¶66    On the narrower question about unanimity and the elements within a charge, our supreme court has held that while the jury "must be unanimous on all elements of a criminal charge," it does not need to be unanimous as to "the manner, mode, or factual or legal theory on which [the jury's] verdict is based." *Hummel*, 2017 UT 19, ¶¶ 29, 51 (quotation simplified). "Mere examples of ways of fulfilling such elements, such as theories (or methods or modes) of a crime, are not a necessary part

of a verdict, and thus fall beyond the requirement of unanimity." *State v. Francis*, 2025 UT App 104, ¶ 112, 575 P.3d 1197 (quotation simplified).

¶67    In *Hummel*, our supreme court illustrated this distinction with reference to a hypothetical case in which "the jury heard evidence that the defendant both poisoned the victim and tried to suffocate him with a pillow." 2017 UT 19, ¶ 52. In such a case, the supreme court posited that "there would be no requirement for the jury to agree on which mechanism was the ultimate cause of death" "because the precise mechanism of the cause of death is not an element of the crime of murder." *Id.* Instead, "[a]ll that matters under our substantive law is that the defendant caused death knowingly or intentionally." *Id.* Following the lead of such authority, we recently concluded in *Francis* that the defendant "was not entitled to an instruction requiring unanimity on theories of nonconsent." 2025 UT App 104, ¶ 112. We held that the element in question was a nonconsensual touching, so "while the jury was required to be unanimous in its conclusion" that the defendant "sexually touched [the victim] without her consent, it was not required to be unanimous as to why it believed that [the victim] did not consent." *Id.* ¶ 115.

¶68    In this case, Youren makes arguments relating to both levels of this analysis—namely, she first argues that for each offense, the State violated the rule against duplicity by including, within a single count, multiple violations of each statute, and she thus argues that the jury should have been required to be unanimous as to each particular count; second, Youren argues that for each offense, the jury should have been required to be unanimous as to each transaction because those transactions, in her view, were how the State proved the elements.

2.    Exploitation

¶69    We start with the exploitation charge. Under the controlling statute, an individual commits the offense in question

if he or she "unjustly or improperly uses or manages the resources of a vulnerable adult for the profit or advantage of someone other than the vulnerable adult." Utah Code § 76-5-111.4(2)(c).[5]

¶70    For unit of prosecution purposes, we see no basis for concluding that Youren somehow committed a separate offense with respect to the separate transactions at issue. "When we interpret statutes, our primary objective is to ascertain the intent of the legislature, and that intent is sometimes expressed through verb tense or verb form." *State v. Paule*, 2021 UT App 120, ¶ 25, 502 P.3d 1217 (quotation simplified), *aff'd on other grounds*, 2024 UT 2, 554 P.3d 844. Here, as a matter of ordinary usage, we think the phrase "uses or manages" could certainly refer to a single use or act of management. But we think the same verbs could also plausibly be used to refer to multiple such instances. A person could say, for example, that she thinks her friend "uses illegal drugs" to refer to ongoing or repetitive behavior.

¶71    But if there was any doubt about this, it's removed in this instance because Youren was charged with the second degree felony variant of the offense in question. By statute, second degree felony exploitation requires proof that the conduct was "done intentionally or knowingly and the *aggregate value* of the *resources* used or the profit made is or exceeds $5,000." Utah Code § 76-5-111.4(3)(a) (emphases added). Although the jury was not informed that Youren had been charged with a second degree felony, it was instructed, in the elements instruction, that it needed to find that "the aggregate value of the resources used, or the profit made was or exceeded $5,000."

¶72    The word "aggregate" is commonly understood to mean "taking all units as a whole," "collectively," or "considered as a

---

5. The exploitation statute has been renumbered since the time of the charged conduct. Given that the relevant statutory language remains unchanged, however, we cite the current version for convenience.

whole."[6] And the fact that the statute (and, here, the elements instruction) uses the plural "resources" likewise indicates that separate transactions may well be at issue. Thus, as charged and submitted to the jury, the offense in question contemplated that multiple transactions could be aggregated into just a single count. We therefore reject Youren's claims as they relate to an alleged problem of duplicity.

¶73 As to Youren's argument about the individual transactions constituting separate elements, we agree with the State's view that because the second degree felony turns on whether the "*aggregate value* of the resources used or the profit made *is or exceeds* $5,000," Utah Code § 76-5-111.4(3)(a) (emphases added), the element that the State had to prove was something akin to a course of conduct implicating the improper use of resources involving the collective amount, which seems different from labeling each transaction as an individual element for which the jury was required to be unanimous. We recognize that the distinction between (1) the elements and (2) "the manner, mode, or factual or legal theory on which [the jury's] verdict is based," *Hummel*, 2017 UT 19, ¶ 51, may sometimes seem fuzzy, but this is the line that our supreme court has drawn. And here, we simply don't think that it's obvious, as is required for a plain error claim, that the transactions constituted proof of elements for which jurors needed to be unanimous, rather than constituting the "manner, mode, or factual . . . theory" for proving the actual element, in which case unanimity would not be required. *Id.* Nor do we think, for purposes of the ineffective assistance claim, that Counsel performed deficiently by not making what would have been a decidedly novel argument. For these reasons, we reject Youren's claims.

---

6. *Aggregate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/aggregate [https://perma.cc/NML2-7ZEQ].

3.      Theft

¶74     We next turn to the theft charge. Under the controlling statute, an individual commits theft if he or she "obtains or exercises unauthorized control over another person's property with a purpose to deprive the person of the person's property." Utah Code § 76-6-404(2).[7]

¶75     Our supreme court has recognized that theft is not a "continuing offense" and that "the key actus reus elements" of "obtaining or exercising" are "discrete acts that are satisfied instantaneously." *State v. Taylor*, 2015 UT 42, ¶ 27, 349 P.3d 696 (quotation simplified). In light of this authority, Youren claims that the unit of prosecution turned on individual transactions or amounts taken and that the jury should have therefore been instructed that it was required to be unanimous as to each particular transaction that supported the conviction.

¶76     Pushing back, however, the State invokes what is often called "the single larceny rule." This rule applies in "theft-related crimes." *State v. Bell*, 2016 UT App 157, ¶ 11, 380 P.3d 11. When applicable, the rule holds that "if there is but one intention, one general impulse, and one plan, even though there is a series of transactions, there is but one offense." *State v. Kimbel*, 620 P.2d 515, 518 (Utah 1980) (quotation simplified). In this sense, the rule

---

7. The theft statute was recently amended. As with the exploitation statute, however, because the changes do not affect the relevant language, we cite the current version for convenience.

     We also note that, similar to the exploitation charge, theft is elevated to a second degree felony if the "value of the property is or exceeds $5,000." Utah Code § 76-6-404(3)(a)(i). Youren was charged with the second degree felony variant in this case, and while the jury was not informed of the classification of the charged offense, it was instructed that it was required to find that "the value of the property or services" at issue "is or exceeds $5,000."

"allows the aggregation of multiple takings over a period of time into a single charge of theft." *Taylor*, 2015 UT 42, ¶ 30.

¶77    The parties in this case dispute whether the single larceny rule applies to the theft crimes at issue. To determine the scope of the rule, we think it appropriate to briefly survey cases in which Utah courts held that it did or did not apply.

¶78    Starting with cases in which it did apply, we find the following to be instructive:

- In *Kimbel*, the supreme court held that the rule applied where the defendant committed several thefts of the same kind of item from the same company "at different times on the same day" and where the defendant then instructed an accomplice on how to sell those items to others for profit. 620 P.2d at 516, 518. In the court's view, these thefts were appropriately aggregated and then charged as a single offense because they were "part of a continuing plan." *Id.* at 518.

- In *State v. Crosby*, the supreme court considered a case in which the defendant, who was a bookkeeping clerk for a company, was alleged to have "misappropriated company funds for her personal use" over a period of seven months. 927 P.2d 638, 640 (Utah 1996). Based on this conduct, the defendant was convicted at trial of three counts of theft. *Id.* On appeal, however, the supreme court held that "although the transactions" at issue had "occurred over a period of time, they were part of a single plan and should have been charged as a single offense." *Id.* at 645.

- Finally, in *State v. Gibson*, the defendant was an employee of a publishing company, and he was charged with taking money that had been paid to the company "from divers[e] persons" in a series of transactions over the course of a month and a half, failing "to account for the moneys so

collected," and then "fraudulently and unlawfully appropriat[ing] and convert[ing] them to his own use." 108 P. 349, 350 (Utah 1910). In the supreme court's view, these facts supported just a single charge of embezzlement because they represented a "continuous offense" that had been committed through "a series of connected transactions." *Id.* (quotation simplified).

¶79   In contrast to these cases, the supreme court held in *Taylor* that the rule did not apply where the defendant was charged with several counts of theft for actions involving different victims that occurred months and even years apart. *See* 2015 UT 42, ¶¶ 7–8, 30. And in *Gibson*, our supreme court hypothesized that the rule would not apply in a situation in which "properties belonging to different persons located at different places were purloined, and where each asportation constituted a separate and distinct offense." 108 P. at 350.

¶80   With these principles in mind, we agree with the State that the single larceny rule applied to the facts at issue here. Again, at trial, the State narrowed the theft count to the post-death financial transactions in which Youren used money from Neighbor's account to pay off her own personal credit card. These transactions were all connected since Youren was only able to make the necessary transfers because (1) she had earlier entered into the caretaking agreement with Neighbor, and (2) pursuant to that agreement, Neighbor had added her to his bank account and allowed her to access his funds to pay off ranch and medical expenses. These transfers were thus taken from a single person—indeed, from a single bank account—and they were all made possible by a single grant of prior authority. In this sense, Youren was very much akin to an employee who was charged with embezzling from a single employer over the course of a period of time. And as explained, the single larceny rule has been applied to exactly this kind of conduct.

¶81 As a result, the individual transactions would not have constituted separate offenses, but they would instead have constituted just a single theft count. Because of this, for duplicity purposes, the district court did not obviously err by failing to sua sponte instruct jurors that they must be unanimous as to the individual transactions, nor did Counsel render deficient performance by not filing what would have been a futile motion.

¶82 This leaves the remaining question of whether jurors should have been instructed, for purposes of the elements analysis, that they were required to be unanimous as to individual transactions. But for similar reasons, we again disagree with Youren's contention. Youren points to no authority holding that in a case like this one where the single larceny rule applies, jurors must unanimously agree on the individual acts or transactions that constituted theft, and the cases recited above suggest otherwise. In this sense, such acts or transactions would appear to be "the manner, mode," or "method[]" by which the defendant committed the broader crime. *Hummel*, 2017 UT 19, ¶¶ 51, 57. At minimum, we don't think it's obvious that such unanimity is required in such a case, so Youren's plain error claim fails. And we likewise don't believe that Counsel acted unreasonably by not anticipating that these doctrines applied in this manner, so we likewise reject Youren's claim that she received ineffective assistance in this regard.

### III. Jury Instructions

¶83 Youren next claims that Counsel provided ineffective assistance by not making various objections to the jury instructions. We disagree with each of Youren's claims.

### A. Affirmative Defense Instructions

¶84 As noted, the jury was instructed on the defenses of (1) ignorance or mistake of fact and (2) honest claim of right. On appeal, Youren argues that these were affirmative defenses, and

she then argues that she received ineffective assistance because Counsel did not ask the court to instruct the jury that, as affirmative defenses, (1) the State was required to disprove them beyond a reasonable doubt and (2) these defenses would result in acquittal. We disagree.

1.    Ignorance or Mistake of Fact

¶85    Starting with the ignorance or mistake of fact defense, it's true that this defense is an affirmative defense. *See, e.g., State v. Martinez*, 2002 UT 80, ¶ 3 n.2, 52 P.3d 1276; *State v. Van Oostendorp*, 2017 UT App 85, ¶ 39, 397 P.3d 877. It's also true that, "because the burden of proof for an affirmative defense is counterintuitive, instructions on affirmative defenses must clearly communicate to the jury what the burden of proof is and who carries the burden." *State v. Lee*, 2014 UT App 4, ¶ 27, 318 P.3d 1164 (quotation simplified). And finally, it's true that, as a general rule, the State must disprove an affirmative defense beyond a reasonable doubt once the defense has been "put into issue." *State v. Low*, 2008 UT 58, ¶ 45, 192 P.3d 867 (quotation simplified).

¶86    Even so, as far as affirmative defenses go, this defense is somewhat atypical. Many (if not most) affirmative defenses operate outside the elements of the charged offense. Black's Law Dictionary, for example, defines an "affirmative defense" as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." *Defense*, Black's Law Dictionary (12th ed. 2024). Self-defense is a classic example. As expressed in our controlling statute, this defense allows a defendant to argue that, even if it's true that the State has proven that the defendant killed another person and the defendant had the requisite mens rea, the defendant should still be acquitted because he or she "reasonably believe[d] that force [was] necessary to prevent death or serious bodily injury . . . as a result of imminent use of unlawful force." Utah Code § 76-2-402(2)(b). So too with respect to the affirmative defense of coercion, which

applies when the person satisfied a crime's actus reus and mens rea requirements but "engaged in the proscribed conduct because the person was coerced to do so by the use or threatened imminent use of unlawful physical force upon the person or a third person, which force or threatened force a person of reasonable firmness in that situation would not have resisted." *Id.* § 76-2-302(1). Again, the idea is that, even if the State has proven each of the elements of the offense, something outside of those elements nevertheless justifies the behavior or at least negates the defendant's criminal culpability. And this dynamic is why it is ordinarily imperative that the jury be instructed that the State bears the burden of disproving the affirmative defense beyond a reasonable doubt.

¶87   But although mistake of fact is classified as an affirmative defense under Utah law, *see id.* § 76-2-308, it doesn't fit this same pattern. The controlling statute for this defense states that it applies to "ignorance or mistake of fact *which disproves the culpable mental state,*" *id.* § 76-2-304(1) (emphasis added), and this is precisely how the jury was instructed in this case.

¶88   As noted, Youren's claim on appeal is that the jury should have been instructed that, because this was an affirmative defense, (1) the State was required to disprove it beyond a reasonable doubt and (2) the defense would result in acquittal. But other instructions that were given in this case already covered that ground. The jury was instructed on the elements of the charges (including, of note, the mens rea for the offenses), that the State bore the burden of proving each of the elements (including mens rea) beyond a reasonable doubt, that a failure by the State to prove each element beyond a reasonable doubt would result in acquittal, and that Youren did "not have to prove anything." Thus, in the context of this particular defense and the instructions that were given, Youren is now faulting Counsel for not asking the court to give what would have been redundant instructions. Under these circumstances, we see no basis for concluding that Counsel performed deficiently by not making such a request, nor

do we see any reasonable probability that giving these additional instructions would have resulted in a different outcome.

2.      Honest Claim of Right

¶89     We reach a similar conclusion, albeit for slightly different reasons, with respect to the "honest claim of right" defense.

¶90     As noted above, the theft statute requires proof that the defendant "obtain[ed] or exercise[d] unauthorized control over another person's property with a purpose to deprive the person of the person's property." Utah Code § 76-6-404(2). By statute, a defendant can make an honest claim of right defense in a theft case. *See id.* § 76-6-402. The defense applies if the defendant actor:

> (a) acted under an honest claim of right to the property or service involved;
>
> (b) acted in the honest belief that the actor had the right to obtain or exercise control over the property or service in the manner the actor obtained or exercised control; or
>
> (c) obtained or exercised control over the property or service honestly believing that the owner, if present, would have consented.

*Id.* § 76-6-402(3).

¶91     It's unclear to us whether the relationship between this defense and the statutory elements is quite as direct as it is for the mistake of fact defense we just discussed.[8] But even so, we need

---

8. Some cases have suggested that the mens rea for theft is simply the "purpose to deprive" set forth in the statute. *See State v. Taylor*, 2015 UT 42, ¶ 28, 349 P.3d 696; *State v. Daniels*, 584 P.2d 880, 882

(continued…)

not decide this issue on this basis. Even if it is true that the State must disprove this defense in a manner separate from its obligation to prove the elements, we see no reasonable probability that the jury would have reached a different outcome on the theft charge if it had been given the additional instructions proposed by Youren on appeal.

¶92    As discussed, the State alleged at trial that Youren had committed theft by transferring $24,000 from Neighbor's bank account to her own account after Neighbor's death. Youren's defense to this was that she was authorized to do so pursuant to both the caretaker agreement and communications with Neighbor. She testified, for example, that he told her that she could take "anything [she] needed to make the ranch work," and that he also told her she could take "[a]nything [she] needed because" she was "changing [her] life over and staying there," so "whatever [she] needed personally, it was okay."

¶93    But this was essentially the same defense that Youren made against the exploitation charge, which, again, concerned transactions that predated Neighbor's death. In reaching the verdict that it did, however, the jury necessarily rejected that defense. In light of the instructions that were given on that charge, the jury necessarily found that the State had affirmatively proven that Youren "unjustly or improperly used or managed" Neighbor's resources and that she had done so "intentionally or knowingly." Moreover, based on the instructions that were given, the jury's conviction on the theft charge also shows that it found that the State had affirmatively proven that Youren obtained or exercised "unauthorized control" over Neighbor's property "with

_____

(Utah 1978). If this is all that's required, then in theory, a person could have such a purpose, but it could be based on an honest belief that the person was entitled to deprive the other of the property in question. Thus, unlike the mistake of fact defense discussed above, it's not obviously clear to us that this defense necessarily negates the elements of the charged offense.

a purpose to deprive him" (or, it seems, his estate) thereof. Simply put, if the jury didn't believe that Youren had an honest claim of right during Neighbor's lifetime, the jury wouldn't have believed that she had such a right after his death.

¶94 Given the facts at issue, the instructions that were given, and the jury's verdict, we simply see no reasonable probability that, if the jury had also been told that (1) the State had to disprove the honest claim of right defense by a reasonable doubt or (2) that this defense would result in an acquittal, the jury would have done anything different from what it already did. We therefore reject this claim for lack of prejudice. *See, e.g., State v. Curtis*, 2013 UT App 287, ¶ 34, 317 P.3d 968 ("Appellate courts may resolve an ineffective assistance claim on prejudice alone if the ineffectiveness did not prejudice the trial's outcome." (quotation simplified)).

B.      Additional Instructions Relating to Theft

¶95 Separate from her arguments about the honest claim of right defense, Youren also argues that Counsel should have asked the court to give two more instructions relating to the theft charge. First, she claims that the jury should have been instructed that a person must have had the unlawful intent for theft "at the time" she initially "obtain[ed] or exercise[d] control over" the other person's property; second, she claims that the jury should have been instructed that a person cannot be convicted of theft "if [she] uses the property in a manner that goes beyond the terms of the consent."

¶96 With respect to the first claim, we note that Youren never claimed below that she belatedly recognized that she was not authorized to take Neighbor's property. Rather, her defense was that she *never* had an unlawful intent because the transactions were authorized all along. As a result, we see no basis for concluding that the additional language she now proposes would have benefited her in any meaningful way at trial. We therefore

conclude that Counsel did not perform deficiently by not proposing this language, and we likewise conclude that Youren has not shown that she was prejudiced by its absence.

¶97   With respect to the second claim, Youren was not convicted of theft for simply using Neighbor's property in a manner that went "beyond the term of [his] consent" in some marginal sense, which is how she frames this aspect of this claim on appeal. Rather, she was convicted of *taking* his money—i.e., of transferring his funds to her own bank account for her own use. On the facts presented in this case, this additional language therefore seems wholly inapplicable. We accordingly see no basis for concluding that she was entitled to an instruction employing this language, much less that it would have made any difference in the jury's verdict. We therefore reject this claim for both lack of deficient performance and lack of prejudice.

C.    Additional Instruction Regarding Exploitation

¶98   As noted, the exploitation statute requires proof that the defendant "unjustly or improperly use[d] or manage[d] the resources of a vulnerable adult for the profit or advantage of someone other than the vulnerable adult." Utah Code § 76-5-111.4(2)(c). Before trial, Counsel submitted proposed instructions that (1) defined the term "unjustly" as meaning "to do something that is not in accordance with what is morally right and fair" and (2) defined the term "improperly" as meaning "to do something in a manner not in accordance with accepted standards, especially of morality and honesty." The court included these definitions in the instructions that it gave to the jury. On appeal, Youren claims that Counsel provided ineffective assistance by proposing these additional definitions. Youren points out that these definitions are not set forth in any statute, and she argues that injecting concepts of morality improperly "allowed the jury to form its own theories of criminal liability."

¶99    But again, to prevail on an ineffective assistance claim, Youren must show that she was prejudiced. In her briefs and arguments, however, Youren has not persuaded us that there is any meaningful daylight between the terms used in the statute— "unjustly" and "improperly"—and the extra language added by Counsel that included notions of morality.

¶100   Our conclusion is not just conceptual or theoretical, but it's also warranted in light of the facts at issue in this case. Again, the State's theory was that Youren took advantage of an elderly man by unlawfully taking his money for her own benefit. By contrast, Youren's theory was that these transactions were authorized. But it's clear from the verdict that the jury believed that the transactions were not authorized, which, again, was the predicate for convictions under the State's case that was presented to the jury. As a result, we're not persuaded that there's a scenario in which the jury would have found that the transactions were unjust and improper (which was the statutory language) but not immoral (which was the added language). Because of this, we see no reasonable probability that this additional language changed the outcome of this trial in any way. We accordingly reject this claim for lack of prejudice.

### IV. Vagueness and the Exploitation Statute

¶101   Finally, Youren argues that she received ineffective assistance because Counsel did not move to dismiss the exploitation charge on the basis that the exploitation statute is unconstitutionally vague. In Youren's view, the statute is vague both facially and as applied to the facts of this case. We disagree on both fronts.

¶102   "Vagueness questions are essentially procedural due process issues, i.e., whether the statute adequately notices the proscribed conduct." *Hoffman v. Peace Officer Standards & Training Council*, 2022 UT App 34, ¶ 16, 507 P.3d 838 (quotation simplified). A law is void for vagueness "when its prohibition is so vague as

to leave an individual without knowledge of the nature of the activity that is prohibited." *State v. Mattinson*, 2007 UT 7, ¶ 9, 152 P.3d 300 (quotation simplified). "Conversely, a law is not unconstitutionally vague if it is sufficiently definite to provide adequate notice as to what conduct is proscribed." *Hoffman*, 2022 UT App 34, ¶ 16 (quotation simplified).

¶103 "A statute may be unconstitutional either on its face or as applied to the facts of a given case." *State v. Herrera*, 1999 UT 64, ¶ 4 n.2, 993 P.2d 854. A facial challenge is the more "difficult of the two because it requires the challenger to establish that no set of circumstances exists under which the statute would be valid." *State v. Ray*, 2022 UT App 95, ¶ 34, 516 P.3d 329 (quotation simplified). To prevail on a facial challenge, the defendant must show that the statute in question "is impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). But this court has already rejected a vagueness challenge to the exploitation statute. *See State v. Jones*, 2020 UT App 31, ¶ 62, 462 P.3d 372. As a result, a facial challenge to this statute in this case would have been futile, so to the extent that Youren's ineffective assistance claim turns on a proposed facial challenge, it necessarily fails. *See Rodriguez*, 2025 UT App 84, ¶ 37; *Makaya*, 2020 UT App 152, ¶ 9.

¶104 This leaves Youren's assertion that Counsel should have argued that the statute is unconstitutionally vague as applied to her. The question on such a claim is whether the statute "provide[s] people of ordinary intelligence" with "a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). But "when a party raises an as-applied vagueness challenge," the court "examine[s] the complainant's conduct before analyzing other hypothetical applications of the law." *State v. Hunt*, 2018 UT App 222, ¶ 19, 438 P.3d 1 (quotation simplified). This is so because "a person who engages in some conduct that is clearly proscribed by statute cannot complain of the vagueness of the law as applied to the conduct of others." *Id.* (quotation simplified).

¶105  As discussed, the exploitation statute makes it illegal to "unjustly or improperly use[] or manage[] the resources of a vulnerable adult for the profit or advantage of someone other than the vulnerable adult." Utah Code § 76-5-111.4(2)(c). As also discussed, the State's theory at trial was that Youren exploited Neighbor before his death by unjustly and improperly using his money to fund her own personal life.

¶106  On appeal, Youren nevertheless claims that the statute was unconstitutionally vague as applied to her because Neighbor had allowed her to use his money for her personal expenses, both through the caretaker agreement and through other conversations. But the problem with this assertion is that this was *Youren's* version of the facts, not *the State's*.

¶107  Youren points to no authority holding that in a criminal case, a motion to dismiss for vagueness can be evaluated based on the defendant's version of the facts, as opposed to the facts alleged by the government. And such a view would be contrary to how motions to dismiss are generally handled. When a defendant files a motion for a directed verdict in a criminal case, for example, the question is whether *the State* produced "believable evidence of all the elements of the crime charged." *State v. Bran*, 2021 UT App 62, ¶ 16, 492 P.3d 147 (quotation simplified). A similar dynamic holds true in civil cases. If a defendant files a motion to dismiss a complaint under rule 12(b)(6) of the Utah Rules of Civil Procedure, for example, the defendant "admits the facts alleged in the complaint but challenges the plaintiff's right to relief based on those facts." *Miller v. Miller*, 2020 UT App 171, ¶ 15, 480 P.3d 341 (quotation simplified).

¶108  We see no legal or logical basis for concluding that a vagueness challenge would operate outside this traditional rubric. If a defendant was charged with murder and his defense was that he didn't pull the trigger, it wouldn't make sense to say that the defendant could prevail on a vagueness challenge by arguing that a reasonable person wouldn't know that the murder

statute applies to a person who didn't kill the victim. Instead, the question would have to be whether a reasonable person would know that the facts as alleged violated the statute.

¶109   So viewed, we see no basis for concluding that the district court would have granted an as-applied challenge here. Again, the key elements from the statute considered whether Youren had "unjustly or improperly" used Neighbor's resources "for the profit or advantage of someone other than" Neighbor, Utah Code § 76-5-111.4(2)(c), and the State's allegations were that she had done exactly that by using Neighbor's money for her own purposes without his authorization. In our view, a person of reasonable intelligence would understand that this alleged conduct was prohibited by this statute. As a result, we conclude that any such motion would have been futile and Counsel therefore did not perform deficiently by failing to make it.

CONCLUSION

¶110   Youren has raised a large number of challenges to her convictions. For the reasons set forth above, we see no reversible error with respect to any of them. We therefore affirm Youren's convictions.

_____